## CONNELL, *et al.* v. GRAY.

No. 4342.   Opinion Filed October 8, 1912.

(127 Pac. 417.)

**COLLEGES AND UNIVERSITIES—Agricultural and Mechanical College—Powers and Liabilities.**   The board of regents of the Agricultural and Mechanical College of this state have authority, where not prohibited, either expressly or impliedly, by law, to collect an incidental fee to bear expenses necessary and convenient to accomplish the objects for which the institution was founded.

(a)   All males and females, who are citizens of the state, and who are between the ages of twelve and thirty years, are entitled to be admitted to all the privileges of the institution and instruction therein.

(b)   No incidental expense may be charged and collected as a condition precedent to entrance.

(c)   A reasonable sum may be required to be deposited by each student as a condition precedent to entrance, to be held as earnest money for all negligent breakage or damage to the property of said institution whilst a student, to be refunded at the end of the term or session, provided it is not consumed by breakage or damage to the property of the institution by such student.

Connell et al. v. Gray.

(d) The board is authorized to prescribe a uniform and require it to be worn by the students.

(e) It may require that each student shall be provided with such uniform prior to the entrance, or that a reasonable deposit be made to procure the same.

(Syllabus by the Court.)

*Error from District Court, Payne County;*
*A. H. Huston, Judge.*

Action by Ruth Gray, by J. T. Gray as next friend, against J. H. Connell, President of the Oklahoma Agricultural and Mechanical College of the State of Oklahoma, and another. Judgment for plaintiff, and defendants bring error. Modified, and affirmed.

*Chas. West,* Atty. Gen., and *W. C. Reeves,* Asst. Atty. Gen., for plaintiffs in error.

*Freeman E. Miller,* for defendant in error.

WILLIAMS, J. The defendant in error, as plaintiff, instituted an action in the district court of Payne county, by her next friend, alleging in her petition that the plaintiff in error J. H. Connell was the duly selected, appointed, and acting president of the Agricultural and Mechanical College of the state of Oklahoma, a public educational institution established and maintained by said state under and pursuant to the Constitution and laws of said state, and is and has been such president thereof at all times mentioned in said petition, and as such president is and has been at all such times the chief executive officer of said college under the laws of said state, and the rules and regulations pertaining thereto, ordained and established by the board of regents of said college, and the duties for him prescribed by the said board of regents, and that the defendant J. E. Hasselle, plaintiff in error, is the duly selected, appointed, and acting registrar of said college, and that as such registrar it is his duty, as prescribed by the board of regents of said college, to enroll, admit, register, and certify as students entitled to instruction therein, under the direction, control, advice, and authority of the president of said college, all persons being citizens of the state of Oklahoma, and be-

tween the ages of twelve and thirty years, if they apply as students therefor; and the plaintiff states that on the 2d day of September, 1912, she being a citizen of Oklahoma, and of the age of sixteen years, and having applied for instruction as a student in said institution, did then and there comply with all the lawful rules and regulations prescribed by the board of regents and the faculty of said institution, and did present her certificate of qualifications entitling her to admission as such student to the committee on entrance of said college, and the said committee on entrance of said college did then and there examine the same and in all things approve the same, and by its chairman did duly certify her as entitled to admission as a student in said college; that thereafter, in compliance with and in conformity to the rules and regulations prescribed by the board of regents of said college, she duly presented said certificate to the said president and said registrar (plaintiffs in error) on the 2d day of September, 1912, and her application for admission therein to instruction, and demanded, requested, and prayed that she be enrolled as a student in said college and admitted to instruction therein, and registered and certified, as required by the laws of the state and the rules and regulations of said board of regents, as a student of said college, and entitled to instruction therein; but the plaintiff states that the defendants, acting together and conspiring to deprive her of her lawful right to admission as a student to the privileges of said college and to instruction therein, as provided by law, and in violation of their duties as provided by law, did on said day refuse to admit her to instruction in said college, or to enroll, register, or certify her as a matriculated student in said institution, and as such student entitled to instruction in said college; that, notwithstanding this plaintiff had complied with all the lawful rules and regulations relating or pertaining to the admission of citizens of the state of Oklahoma as students entitled to be admitted to instruction therein, the said defendants, unlawfully conspiring and acting together for the purpose of depriving plaintiff of her property, did unlawfully, illegally, willfully, without authority of law, and in violation of law, demand of the plaintiff that she pay over to and deposit with the said president and said

registrar, or some other person acting in collusion with them, the sum of $5 in good and lawful money of the United States, worth and of the value of $5, as a condition precedent to the admission of the plaintiff as a student of said college, and as a condition precedent to enrolling her as a student thereof and admitting her to instruction therein.

Plaintiff further states that said defendants further demand the payment of other and further fees from the plaintiff and others in like situation with her as conditions of admission to instruction in said institution, to wit, a deposit of $6, with which the defendants shall purchase for her a certain dress and equipment for use by her in the gymnasium of said institution, and a like fee of all other students for like dress and equipment for such use; also from all male students a deposit of $17 for the purchase of a suit or uniform for use in the military department of the said college while receiving instruction in said department, such gymnasium and military instruction being compulsory under the rules and regulations of such college; also a fee of $2 per term for the use of a typewriting machine by students in the commercial department, and $2 per term for the use of a piano in the music department for each student about to take instruction, said pianos and said typewriting machines being the property of said college and a part of its equipment, and being owned by it as fully and to the same extent as it owns its grounds, campus, and other buildings, all such fees in the various classes and departments being demanded and required from students applying for instruction in said college, and being exacted by defendants before said defendants will register, accept, admit, or certify any such student as entitled to admission to instruction therein.

Defendants, answering, admit:

"That the said Ruth Gray, on September 2, 1912, applied to the defendants for admission into the said Oklahoma Agricultural and Mechanical College, and that admission into the college was denied said Ruth Gray for and on account of her failure and refusal to pay the term fees of $5 to be charged all students, of which $2.50 is not returnable, and the balance to become a trust fund, which may be returned at the end of the term, unless absorbed by charges for breakage and repairs made against the individuals and the student body, as provided by the orders, rules,

and regulations promulgated by the faculty of said college, and duly approved by the state board of agriculture of the state of Oklahoma, the board of regents of said college.   That said defendants, in'demanding such term fee of $5, acted under and by virtue of the following proceedings of the faculty, of April 11, 1912, which was confirmed by the college committee of the board of regents on August 14, 1912, which proceedings were in words and figures as follows:  'Moved that a fee of $5.00 per term be charged all students, of which $2.50 shall not be returnable, the balance to be a trust fund, which may be returned at the end of the term, unless absorbed by charges for breakage and repairs made against individuals and the student body.   This to take the place of all fees, with the exception of music and typewriting fees, and that the change be published in the catalog.' Further answering, defendants state that the said term fee of $5 is in no sense a tuition, and will not be used for that purpose. The funds arising from the collection of this fee will be expended for the purchase of supplies and materials consumed by students and for services rendered and for the support of student organizations necessary to the highest efficiency of the college, viz., the Y. M. C. A., the Y. W. C. A., student literary societies, the students' college paper, the athletic association for women, the athletic association for men, and similar student enterprises. That the fund arising from the collection of such fees will be wholly insufficient to meet all the expenses incident to the enterprises named."

On application, a temporary injunction was granted the plaintiff (defendant in error) against the defendants (plaintiffs in error), which is, in part, as follows:

" * * * It is considered and ordered by the court that the defendants herein, J. H. Connell, president of the Oklahoma Agricultural and Mechanical College of the state of Oklahoma, and J. E. Hasselle, registrar thereof, be and the same are hereby enjoined and restrained until the further order of the court herein from demanding, requiring or compelling the payment of any money or sum of money to them or into their hands or into the hands of any one else by the plaintiff as a condition for her admission to instruction as a student in the said Agricultural and Mechanical College of the state of Oklahoma; that they be, and they are hereby, enjoined and restrained from demanding, requiring, and compelling the payment of any money or sums of money to them, or into their hands, or into the hands of any one else, by any person being a citizen of the state of Oklahoma and entitled to admission to instruction under the rules and

regulations prescribed by the board of regents of said college, other than prescribing the payment of money as a condition for admission. It is further ordered by the court that the said defendants may, and they are hereby expressly permitted to, require from students taking military drill or gymnasium instruction in said institution proper uniforms and clothing as prescribed by the board of regents and faculty, and necessary and proper for use in said instruction, and may accept from persons taking any such instruction deposits of money for the furnishing of such uniforms and equipment for such purpose, and may require deposits from students taking instruction in any department of the college, wherein breakage to equipment and supplies may occur, or other damages that are liable to be made, the same to be held as a trust fund, and to be repaid to the student depositing the same in case the student shall not cause sufficient damage or breakage to absorb the amount thereof, and in case he shall cause such damage or breakage same shall be prorated and the balance returned to him."

This proceeding in error is prosecuted to reverse this order. The Oklahoma Agricultural and Mechanical College was organized or provided for by the first Legislative Assembly of the territory of Oklahoma. St. Okla. 1890, pp. 82, 85; article 12, c. 103, Comp. Laws 1909. The provisions of the act of Congress, approved July 2, 1862 (Act July 2, 1862, c. 130, 12 St. at L. 503; 2 Fed. St. Ann. p. 850), and the supplemental act, approved March 2, 1887 (Act March 2, 1887, c. 314, 24 St. at L. 440; 1 Fed. St. Ann. p. 9 [U. S. Comp. St. 1901, p. 3218]), were accepted; the territory of Oklahoma obligating itself to comply with all of the provisions of said act. The state is obligated to carry out these provisions. Section 4, art. 1, Const.; sections 1 and 2 of the Schedule. Nothing in said acts of Congress, or the act creating said institution, requires said college to be maintained free of tuition, and that students be admitted therein for instruction free from all fees and charges, unless it be section 25 of said act (section 253, St. Okla. 1890), which provides:

"Males and females shall be admitted to all the privileges of the institution hereby established, and all citizens of the territory of Oklahoma between the ages of twelve and thirty years shall be admitted to instruction therein, if they apply as students therefor."

In Kansas the statute provides:

"Admission into the university shall be free to all the inhabitants of this state, but a sufficient fee shall be required from nonresident applicants, to be fixed by the board of regents, and no person shall be debarred on account of age, race or sex." (Section 11, c. 258, Kansas Laws 1889.)

In *State of Kansas ex rel. Attorney General v. Board of Regents of the University of Kansas et al.,* 55 Kan. 389, 40 Pac. 656, 29 L. R. A. 378, it was held that the board of regents had no power to collect a fee of $5, or any other fee, for the use of library, or exclude students from the use of the library for the nonpayment of such fee, and that the assumption by the board of the power to collect such fees and to exclude students from the library for the nonpayment thereof was an unwarranted assumption of corporate powers, from the exercise of which they will be ousted by that court in a suit brought in the name of the state by the Attorney General. In the opinion it is said:

"It is contended that the board of regents may yet collect a reasonable fee for the wear and tear of the books; that the word 'free' must be taken with qualifications; that in the nature of things there must be rules and regulations; that each and every student cannot be permitted to occupy the chancellor's seat at his desk, or any other place in the university he may choose at his own sweet will, but that the regents and the chancellor have a right to make proper regulations; and that the fee imposed is no more than is reasonable to preserve and protect the library. We fully agree with so much of the claim of the learned counsel as asserts the right of the regents and the chancellor to make all necessary and proper rules and regulations for the orderly management of the school, the preservation of discipline therein, and the protection of its property, but that it may require the payment of money as a condition precedent to the use of the property of the state is another and a different claim, with which we do not agree. If the regents may collect $5 for the use of the library, why may they not collect also for the use of the rooms of the building and of its furniture? Why may they not impose fees for walking in the campus, or for the payment for instructors? All these things have cost money. There are expenses incurred by the state on behalf of the students in connection with every department of the school. If they may collect for one thing, it is not apparent why they may not collect for another. It is suggested that supplies are furnished in

the laboratories for the use of students, which are destroyed; that vessels and implements may be broken; and that the students should certainly be required to pay for these things. No question of that kind, however, is now presented, and express provision therefor is made by chapter 226, Laws of 1895. The library is provided for permanent use. Each volume, with proper care, may be used by a great number of students and for a long term of years. The library as a whole is subjected to wear and tear, but only in the same manner as furniture and other properties furnished by the state. The buildings, furniture, library, and apparatus, as well as the services of the faculty, are furnished and paid for by the state. These, we hold, under the provisions of the statute quoted, are free to all residents of the state who are entitled to admission into the university. The regents have no power to raise a fund, to be managed and disposed of at their discretion, by charging fees for the use of the library, or under any other claim for any other purpose, unless expressly authorized to do so by law."

The following cases are cited by counsel for plaintiffs in error as supporting their contention: *State ex rel. Priest v. Regents of the University of Wisconsin,* 54 Wis. 159, 11 N. W. 472; *City of New Orleans v. Board of Administrators of Tulane Educational Fund,* 123 La. 550, 49 South. 171; *Bryant v. Whisenant et al.,* 167 Ala. 325, 52 South. 525, 140 Am. St. Rep. 41.

In the Wisconsin case the question turned largely upon the construction of legislative acts, and has weight as an authority in this case only to show that the board of regents, where not prohibited, either expressly or impliedly, by law, have the power to collect incidental fees to bear expenses necessary and convenient to accomplish the objects for which the institution was founded. There the board were permitted to levy and collect incidental fees for the heating and lighting of the public halls and rooms of the university; no provision having been made by law for such to be done at the expense of the state.

In the Louisiana case it was held that free tuition was a bar to the collection of the registration fee, but not to the collection of a laboratory fee. In the opinion the court said:

"An amount is claimed as a laboratory fee. There is a difference between the laboratory fee and the matriculation fee. The last is general, but entirely proper; while, as relates to the laboratory fee, each student admitted to the laboratory has a

direct personal interest. He is brought in direct contact with the department. He is a consumer of the articles placed before him for his use. He uses, breaks, and destroys them, and he at other times keeps them in a safe and entire state. It may be said that they are in the nature of personal expenses. No student should object to paying them. They are more particularly personal, because not all students enter or are admitted to the laboratory. There are those who remain content enough never to enter the laboratory rooms, with a view of availing themselves of the opportunities for self-improvement offered. The more ambitious for self-improvement are admitted, and these can, we imagine, extend their ambition slightly further, and provide the pittance, the payment of which will only make them more appreciative of the benefit conferred."

In the Alabama case it was held:

"Code 1907, secs. 1678-1993, relating to the public school system, contemplates free tuition to all minor residents more than seven years old; but, in the absence of statutory provision for a fund of heating and lighting schoolrooms, the county boards of education may prescribe a reasonable method for raising such fund, e. g., by imposing a reasonable incidental fee upon pupils, and delegate its authority to the district boards and teachers to enforce the method adopted."

In the opinion it is said:

"And when the statute makes no provision for a fund for this purpose, the county boards have the right to prescribe a reasonable method for the raising and collection of this fund, and to delegate the authority to the district boards and teachers to enforce said rules. We also think that the requirement of a reasonable incidental fee for this purpose, as a condition precedent to attendance, is contemplated by the statute, in the absence of any special provision for same. * * * *"

The board of regents are authorized to dispose of "all monies appropriated by the state Legislature and by Congress." Section 8364, Comp. Laws 1909.

Section 3, art. 1, c. 3, Sess. Laws 1907-08, p. 5, provides as follows:

"The board of agriculture shall be the board of regents of all agricultural and mechanical colleges; it shall select the professors; presidents and other employees of each of said schools, fix their salaries and prescribe their respective duties. It shall prescribe the course of study in each of said schools, and shall

ordain and establish such rules and regulations for the management thereof, not inconsistent to (with) the laws of the state, as they may deem necessary and proper."

The board of regents have the implied power to do everything necessary and convenient, where it is not prohibited, either expressly or impliedly, by law, to accomplish the objects for which the institution was founded. To do this the property, grounds, buildings, halls, and apparatus, furniture, etc., must be reasonably preserved against negligent destruction. To require a reasonable deposit by each student as a condition precedent to entrance, to cover any such breakage or damage thereto, to be refunded at the close of the term or session in the event no breakage or damage is done by such student, appears to be necessary and reasonably within the implied powers of said board. The fee of $2.50 for such purpose is not unreasonable.

It is conceded by counsel for all parties in this proceeding that the board has authority to prescribe the kind of uniform and require same to be worn by the students. Such being the case, it is within the power of said board to require the students, at the time of entrance, to provide themselves with such uniform, or make a reasonable deposit to cover the cost of same.

As to the Young Men's and the Young Women's Christian Associations, it is not permissible for said board to make it compulsory upon any student in said institution to contribute to the maintenance of the same. Section 5, art. 2, of the Constitution of this state, provides:

"No public money or property shall ever be appropriated, applied, donated, or used, directly or indirectly, for the use, benefit, or support of any sect, church, denomination, or system of religion, or for the use, benefit, or support of any priest, preacher, minister, or other religious teacher or dignitary, or sectarian institution as such."

The first legislative act passed toward the separation of church and state was that by Virginia in 1786, entitled "An act for establishing religious freedom," which was brought about by Thomas Jefferson. In the Virginia Constitution of 1830 (section 11, art. 3) it is provided:

"No man shall be compelled to frequent or support any religious worship, place, or ministry whatsoever; nor shall any

man be enforced, restrained, molested, or burdened in his body or goods, or otherwise suffer, on account of his religious opinions or belief; but all men shall be free to profess, and by argument to maintain, their opinions in matters of religion, and the same shall in no wise affect, diminish, or enlarge their civil capacities. And the Legislature shall not prescribe any religious test whatever; nor confer any peculiar privileges or advantages on any one sect or denomination; nor pass any law requiring or authorizing any religious society, or the people of any district within this commonwealth, to levy on themselves or others any tax for the erection or repair of any house for public worship, or for the support of any church or ministry, but it shall be left free to every person to select his religious instructor, and make for his support such private contract as he shall please."

This constitutional provision was but an embodiment of the act of 1786, establishing religious freedom. Section 5, art. 2, *supra,* appears to be identical with article 2, sec. 7, Const. Mo. 1875. The first prototype of it, however, seems to be in the Constitution of Michigan of 1835, article 1, sec. 5, which was reincorporated in article 4, sec. 40, of the Michigan Constitution of 1850. In Michigan it has been held that the reading of extracts from the Bible emphasizing the moral precepts of the ten commandments, as a supplemental text-book, which was used at the close of the sessions, and from which any pupil might be excused upon the application of parents or guardian, was not violative of such constitutional provisions. *Pfeiffer v. Board of Education of City of Detroit,* 118 Mich. 560, 77 N. W. 250, 42 L. R. A. 536. The following states support the Michigan rule: *Moore v. Monroe,* 64 Iowa, 367, 20 N. W. 475, 52 Am. Rep. 444; *Billard v. Board of Education,* 69 Kan. 53, 76 Pac. 422, 66 L. R. A. 166, 105 Am. St. Rep. 148, 2 Ann. Cas. 521; *Hackett v. Brookville School Dist.,* 120 Ky. 608, 87 S. W. 792, 69 L. R. A. 592, 117 Am. St. Rep. 599, 9 Ann. Cas. 36; *Donahoe v. Richards,* 38 Me. 379, 61 Am. Dec. 256; *Spiller v. Inhabitants of Woburn,* 12 Allen (Mass.) 127; *Church v. Bullock* (Tex.) 109 S. W. 115, 16 L. R. A. (N. S.) 860. The following states support the contrary rule: *State ex rel. Freeman v. Scheve,* 65 Neb. 853, 91 N. W. 846, 93 N. W. 169, 59 L. R. A. 927; *State ex rel. Weiss v. District Board of School*

*Dist. No. 8,* 76 Wis. 177, 44 N .W. 967, 7 L. R. A. 330, 20 Am. St. Rep. 41; *People v. Board of Education,* 245 Ill. 334, 92 N. E. 251, 29 L. R. A. (N. S.) 442, 19 Ann. Cas. 220.

But the question here for determination is as to whether the board of regents of the Agricultural and Mechanical College have authority to levy a fee on every proposed student as a condition precedent to entrance therein, to be used for the maintenance of the Young Men's and the Young Women's Christion Associations. Said section 5 of article 2 is self-executing, and requires no act of the Legislature to become operative, but by itself controls all legislation upon the subject of appropriating money or other property for such purposes. *Synod v. State,* 2 S. D. 366, 50 N. W. 632, 14 L. R. A. 418. Obviously it would not be permissible for said board to use any funds appropriated by the state for the purpose of maintaining these associations, teaching and promulgating a system of religion. If the Legislature is powerless to appropriate a fund for the purpose of maintaining such associations, or to authorize said board to use said funds for such purposes, it follows that it is not within its power to authorize said board to require a fee to be paid by the student as a condition precedent to entrance, to be used by said board for. said purposes. For other authorities on this subject, see citations under sections 3 and 13 of Williams' Ann. Const. of Okla.

It is within the power of said board to provide not only for athletics to be taught, but also for an athletic association of the students in said institution. It is also within the power of said board to provide for a college magazine. But to say that it was reasonably within the implied powers of said board, as a condition precedent to entrance, to require a deposit to be. made for the maintenance of said athletic association and magazine would be equivalent to saying that it was within the power of said board to require a deposit by each student for the payment of all books and appliances necessary to be used by such students in said institution as a condition precedent to entrance.

If there is no appropriated fund available for the replacing of broken vessels or apparatus in the laboratory, or for the sup-

port of the gymnasium or the athletic association, or for the publication of the college magazine, or for the repair of the musical instruments and the typewriting machines, then, as to such students in their course of study and training that use the laboratory or the gymnasium or the magazine, or participate in the athletic association, within their college course, a reasonable incidental fee may be required after admission. All citizens of this state between the ages of twelve and thirty years are entitled to be admitted to instruction in this institution. The board of regents are permitted to prescribe only such rules relative to admission when not prohibited, expressly or impliedly, by law, as may be necessary and convenient to carry out the purposes of the institution. To require a reasonable deposit to reimburse the institution for breakage and injury negligently done by the students in the institution, such deposit to be refunded if no injury is done by the student, is reasonable and necessary and conducive to carrying out the purposes of the institution. To require the supplying of the required uniform as a condition precedent to entrance comes also within the same rule; but, if the proposed student has supplied himself with such uniform, then there is no necessity for a deposit for such purpose. The other matters arise after the entrance of the student, and come within the powers of the regulation of the institution after such entrance.

The order, as modified to conform to this opinion, will be affirmed.

TURNER, C. J., and HAYES, KANE, and DUNN, JJ., concur.