### RHEAM et al. v. BOARD OF REGENTS of UNIVERSITY OF OKLAHOMA et al.

No. 20296.    Opinion Filed Jan. 24, 1933.

Lydick, McPherren & Jordan, for plaintiffs in error.

J. Berry King, Atty. Gen., Randall S. Cobb, Asst. Atty. Gen., and J. B. Dudley, for defendants in error.

ANDREWS, J.  This is an appeal by the plaintiffs from a decree of the district court of Oklahoma county denying their prayer for injunctive relief against the Board of Regents and certain other officers of the University of Oklahoma, in an action in which the plaintiffs, who are students in the University of Oklahoma, sought to have the defendants enjoined from enforcing an order requiring the payment of a certain fee in the amount of $2.50, the payment of which was required as a condition precedent to the enrollment of each student in the University, and requiring the defendants to enroll the plaintiffs and all other applicants for enrollment similarly situated and otherwise entitled to enrollment, notwithstanding their failure or refusal to pay such a fee.

Prior to April 9, 1923, there existed an organization known as the Oklahoma Student Union, which had been organized for the purpose of promoting the educational, literary, scientific and religious development and advancement of the students of the University of Oklahoma.  The action contemplated was that funds would be raised by subscription and otherwise and that the funds so raised would be used for the purpose of constructing a student union building on the campus of the University. The purposes were approved by the Board of Regents of the University and by former students and students of the University, and, at a state-wide meeting, a committee was authorized and instructed to take all steps necessary thereto, including the organization of corporations.

Under date of April 9, 1923, Senate Bill No. 388 of the regular session of the Ninth Legislature of Oklahoma was approved. Chapter 127, Session Laws 1923, section 7211, O. S. 1931.  By that enactment the Legislature authorized the Board of Regents of the University of Oklahoma to lease to the Board of Governors of the Oklahoma Student Union, not to exceed two acres of the campus of the University at Norman, Okla., for the purpose of erecting and maintaining thereon a building to be erected without cost to the state and to be for the use of the students of the University. The

Board of Regents was thereby authorized to supply heat, light, power, and water for said building, to establish an annual rental, not to exceed $1 per year, and, to incorporate in the lease such regulations with reference to the management and control of the building and the conduct of the students while therein as the Board of Regents might deem advisable for the welfare of the University.

Thereafter there were filed in the office of the Secretary of State of Oklahoma articles of incorporation of trustees of the Stadium-Union Memorial Fund of the University of Oklahoma, Inc., the purpose of which corporation was to promote the educational, literary, scientific, and religious development and advancement of the students of the University of Oklahoma, to commemorate the memory of graduates, former students and students of the University who served in the World War, and to solicit, receive, collect, and disburse subscriptions of value to be used for the erection of a stadium and a student union building upon the campus of the University for the exclusive use and benefit of the University and the students thereof, and for all other purposes necessary in carrying out the purposes stated. That corporation was a finance corporation. It was provided in its articles of incorporation that no part of any funds raised would or should inure to the benefit of any member or individual.

Thereafter there were filed in the office of the Secretary of State of Oklahoma articles of incorporation of the Board of Governors of the Oklahoma Union, the sole purpose of which was to promote the educational, literary, scientific, and religious development and advancement of the students of the University of Oklahoma, in memory of the graduates, former students and students of the University of Oklahoma who served in the World War. For those purposes it was authorized to solicit, receive, collect, and disburse funds, pledges, securities, and other subscriptions of value; to hold and maintain the same, and to apply the principal thereof and the income therefrom to the erection of or the acquiring of title to a student union building upon the campus of the University and maintenance thereof for the exclusive use and benefit of the University and the students thereof for educational, religious, literary, and scientific purposes, in memory of the graduates, former students and students of the University who served in the World War, the said structure to be held in trust exclusively

for the use of the University and the students thereof for the purposes stated. The corporation had no authority to issue certificates of stock or to declare dividends, and, in its articles of incorporation, it was provided that no part of its earnings, income, and funds would or should inure to the benefit of any member or individual.

Thereafter there was submitted to the student body of the University at a general election a proposition, as follows, to wit:

Proposal to be Voted Upon:

"There is hereby pledged and levied by the student body of the University of Oklahoma a student fee of two and 50/100 ($2.50) dollars per student each semester of the regular school year and one ($1.00) dollar for each session of the summer school, payable to the order of the

"Board of Governors of the Oklahoma Union, a nonstock, nonprofit corporation, organized by ex-students, alumni and friends of the University of Oklahoma, under the laws of the state of Oklahoma, for the purpose of taking pledges for and constructing, equipping and maintaining a

"Union Building at the University of Oklahoma.

"All payments made hereunder shall also be credited on any individual student pledges heretofore or hereafter made to the Stadium-Union Memorial Fund.

"It is understood that in order to hasten the construction of the Union Building and to carry out the purposes of said corporation, that it will probably be necessary for said corporation to borrow money upon the good faith and credit of this pledge and also upon the good faith and credit of other pledges made by ex-students, alumni, faculty members, students and friends of the University for such purposes. Therefore, for the prompt payment hereof, the good faith and credit of the student body of the University of Oklahoma is hereby expressly and irrevocably pledged to said corporation and all those who may lend money to said corporation for such purposes in reliance hereon.

"The first payment hereunder shall be due and payable at the beginning of the first semester of the school year 1928-29, and upon the approval of this plan by the Board of Regents of the University of Oklahoma and the establishment by it of appropriate means for administering the same, and at the beginning of each semester and summer school thereafter, until all indebtedness incurred on account of said building has been fully paid."

At that election, by the same ballot, officers of the student council, a May queen, a member of the publication board and a

fine arts representative were elected and an amendment to the constitution of the student council was submitted. The plaintiffs were students in the University at the time of that election, but none of them voted for the levying of the fee in issue in this case.

Pursuant to the consent of the student body, as evidenced by the vote of those voting at that election, the Board of Regents of the University, by resolution, provided and established an entrance fee, payable at the time of enrollment, of $2.50 per student for each semester of the regular school year, and $1 per student for each session of the summer school, said fee to be in addition to any other fees duly provided and established, and, when collected, to be paid by the proper officers of the University to the Board of Governors of the Oklahoma Union, to be used for the construction, equipment, and maintenance of the building, or as security for the payment of any bonds issued for the construction thereof.

On the same date the Board of Regents, by resolution, approved the sale by the finance corporation of bonds in the amount of $400,000. Those bonds were secured by a pledge of "All Student Union fees of two and 50/100 ($2.50) dollars per semester per student (there being two semesters each regular school year) and one ($1.00) dollar per student for each of the two summer sessions, of the University of Oklahoma," of the finance corporation and all of the other assets. By that resolution the Board of Regents pledged the good faith and honor of the University, the Board of Regents, the faculty, the officers, the students, the ex-students, alumni and all friends of the University to the prompt and faithful payment of those bonds and interest thereon and the prompt and faithful application of the property and things of value pledged as security thereof.

Thereafter an amended article of incorporation of the Board of Governors of the Oklahoma Union was filed, by which the name of the corporation was changed to Board of Governors of the Oklahoma Student Union, the name of the organization prior to incorporation and the name used by the Legislature in the legislative enactment, supra.

Thereafter the Board of Regents of the University executed a lease of a portion of the campus to the Board of Governors of the Oklahoma Student Union for a term of 99 years as a site for the building. That lease conformed to the legislative enactment, supra.

The bonds were issued, sold and the proceeds collected by the finance corporation, and the student union building was constructed. It was in use at the time this action was commenced.

Notwithstanding the fact that the plaintiffs were students in the University at the time the student body approved the fee in question, at the time the bonds were issued and sold, and at the time the building was being constructed, none of them are shown to have taken any legal steps to prevent the execution of the plans that had been adopted, as hereinbefore stated. Only one of the plaintiffs testified in the case. He testified that he protested the payment of the fee; that he belonged to at least one of the student organizations using the building; that he worked in the building from time to time for compensation; that he paid the fee charged under protest; that he subscribed $50 when the movement was first started; that he understood that he was to have a credit on that subscription for any fee paid, and that he was enrolled in the law department.

A considerable portion of the briefs was used for a discussion of the purposes for which the building was being used. The issue presented by this record is not what use shall be made of the building, but whether or not the fee sought to be charged must be paid as a condition precedent to admission to the University. If the building is being used for any improper purpose, the Board of Regents is authorized by the legislative enactment, supra, to correct the evil.

The plaintiffs contend that the defendants are without authority to collect these fees and turn them over to a private corporation. This is not an action to enjoin the defendants from using public funds for an improper purpose. The action is to enjoin the collection of the fee.

The government of the University of Oklahoma is vested in a Board of Regents. Section 7209, O. S. 1931. That board has all the powers necessary or convenient to accomplish the objects and to perform the duties prescribed by law. Section 7210, O. S. 1931. It is authorized to enact rules for the government of the University. Section 7213, O. S. 1931. It is authorized to make

rules, regulations and by-laws for the good government and management thereof and of each department thereof and to prescribe rules and regulations for the admission of students. Section 7222, O. S. 1931. That authority is limited by a provision of section 7213, supra, that no sectarian or partisan test shall ever be allowed or exercised in the admission of students, and it is further limited by a provision of section 7222, supra, that no student who shall have been a resident of the state for one year preceding his admission shall be required to pay any fees for tuition, except in the law department or for extra studies.

By its resolution, supra, it has required the payment of the fee in question in this case as a condition precedent to admission to the University. It was without authority to do so if that fee is for "tuition" within the meaning of the section, supra. Is the fee a charge for tuition? It is not within the meaning of that term as generally understood or as defined in the commonly used dictionaries. It was so held in Linten v. Lucy Cobb Institute (Ga.) 45 S. E. 53; Bryant v. Whisenant (Ala.) 52 So. 525, and State ex rel. Priest v. Regents of the University of Wisconsin (Wis.) 11 N. W. 472.

The plaintiffs contend that the decision of this court in Connell v. Gray, 33 Okla. 591, 127 P. 417, is decisive of the issue presented. That case involved a fee sought to be charged at the Agricultural and Mechanical College. By the provisions of section 7260, O. S. 1931, white male and female citizens of the state between the ages of 14 and 30 years shall, upon application, be admitted to all privileges of that school. There is no such legislative enactment as to the State University. The statutes are materially different. The decision cited is not controlling. The decision in State ex rel. Attorney General v. Board of Regents of the University of Kansas, 55 Kan. 389, 40 P. 656, is not controlling, for the statute under consideration in that case provided that admission at the University should be free to all inhabitants of the state. There is no such statute in this state applicable to the State University. The Kansas court considered the fee charged as a requirement for the payment of money as a condition precedent to the use of property of the state. No such facts are shown by the record in this case. Herein the fee is not charged for the use of property of the state. Herein the fee is charged for the use of property which the state did not furnish, but which was furnished and which is to be paid for by students, former students, and friends of the University and which is to become the property of the state when the bonds issued have been retired.

We call attention to a statement made by this court in Connell v. Gray, supra, with reference to the Wisconsin decision, supra, as follows:

"In the Wisconsin case the question turned largely upon the construction of legislative acts, and has weight as an authority in this case only to show that the board of regents, where not prohibited, either expressly or impliedly, by law, have the power to collect incidental fees to bear expenses necessary and convenient to accomplish the objects for which the institution was founded"

—and to a statement made by this court in that case as to the authority of the Board of Regents, as follows:

"The Board of Regents have the implied power to do everything necessary and convenient, where it is not prohibited, either expressly or impliedly, by law, to accomplish the objects for which the institution was founded."

Under that rule we are not required to look for grants of power to the Board of Regents of the University, but for limitations on its power, in order that we may determine whether or not the act of the defendants in question in this case has been prohibited. Our attention has been called to no legislative enactment prohibiting the Board of Regents and the officers of the University from requiring the payment of fees, other than for tuition, as a condition precedent to admission to the University, and we know of none.

The trial court found generally for the defendants against the plaintiffs, who were seeking not only a prohibitory injunction, but a mandatory injunction. Under the rule applicable in equitable cases, we have reviewed the record, and we find nothing therein from which we can say that the judgment of the trial court is against the clear weight of the evidence.

The judgment of the trial court is in all things affirmed.

RILEY, C. J., and SWINDALL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur. CULLISON. V. C. J., not voting. McNEILL, J., absent.

Note.—See under (1) 27 R. C. L. 139 et seq.; (2) annotation in L. R. A. 1918F, 681; 27 R. C. L. 144, 145.