In re APPLICATION OF BOARD OF REGENTS OF UNIVERSITY OF OKLAHOMA.

No. 32654.   June 29, 1946.

*171 P. 2d 597.*

Mac Q. Williamson, Atty. Gen., and Mainard Kennerly, Asst. Atty. Gen., for applicant, the Board of Regents of the University of Oklahoma.

PER CURIAM.   On June 6, 1946, the Board of Regents of the University of Oklahoma filed in this court, pursuant to the provisions of chapter 1a, Title 70, Session Laws 1945, p. 295, 70 O.S. Suppl. 1945, sections 2071 et seq., their application for the approval of a bond issue for the construction of dormitories in connection with the University of Oklahoma and for another issue for a music building.  Notice of the hearing on said application was duly given and no protest has been filed.  The court heard oral argument of the applicants in support of the validity of the bonds and that question is now presented for decision.

It appears that a contract for the sale of said bonds has been entered into by the applicants, but that they are to be issued and sold only upon the approval of their validity by this court.

An examination of the bonds and the resolutions authorizing them discloses that they are in substantial conformity with the requirements of the statute, supra, except that in the dormitory issue the bonds contain a provision:

"This bond and the issue of which it is one are payable from the revenues to be derived from the operation of the dormitories constructed, equipped and furnished with the proceeds thereof, *and in the event of a deficiency in such revenues then from fees sufficient to make up such deficiency to be imposed on all students in attendance at the University of Oklahoma.*"

In the music building issue, a similar provision was contained.   Applicants

concede that if they lack authority to make and enforce this agreement on their part, the bonds are invalid.

Section 3 of chapter 1a, supra, provides, in part:

"That the bonds issued hereunder shall not be an indebtedness of the State of Oklahoma or of the institution for which they are issued or the Board of Regents thereof, but shall be special obligations payable solely from the revenues to be derived from the operation of the building, and the board is authorized and directed to pledge all or any part of such revenues to the payment of principal of and interest on the bonds. . . ."

By subdivision (f) of said section the Board of Regents is authorized:

"To fix rents, charges and fees to be imposed in connection with and for the use of the building and the facilities supplied thereby, which rents, charges and fees shall be considered to be income and revenues derived from the operation of the building, and are hereby expressly required to be fully sufficient to assure the prompt payment of principal and interest on the bonds as becomes due. . . ."

Applicants contend that the above-quoted language of subdivision (f) sufficiently authorizes the assessment of a general fee against all students of the University in the event the revenues derived from the buildings are not sufficient to pay the bonds. However, we think that the language quoted, when considered with the other provisions of the act, clearly refers to charges to be made against those occupying or using the buildings, and that the construction sought to be placed thereon by applicants does violence both to the letter and to the spirit of the act. A careful study of the act leads to the inevitable conclusion that the Legislature intended that each building so constructed, when put to the use for which it was intended, should produce sufficient revenue to liquidate the bonds issued for the construction thereof, and that the bonds should be paid solely from the income received from the use and occupation of such buildings.

Applicants further contend that the assessment and collection of such fees is within their general powers under the Constitution and under the statute containing a general grant of power. 70 O.S. 1941 § 1242. In support of this contention they cite Caldwell Bros. v. Board of Supervisors of Louisiana State University, 176 La. 825, 147 So. 5; Priest v. Regents of the University of Wisconsin, 54 Wis. 159, 11 N.W. 472, and other similar cases. We do not consider those cases applicable, for the reason that as to the subject matter involved, chapter 1a, supra, being a special act, supersedes and prevails over the general statute insofar as the subject matter of the special law is involved. Bank of Picher v. Morris, 157 Okla. 122, 11 P. 2d 178; Citizens State Bank of Vici v. Gettig, 77 Okla. 48, 187 P. 217; State v. O'Bannon, 182 Okla. 173, 77 P. 2d 70.

The bonds being issued under the authority of chapter 1a, supra, their issuance and their provisions are subject to the restrictions and limitations in said chapter 1a contained, regardless of the general grant of power contained in 70 O.S. 1941 § 1242.

Applicants assert that in the event such general fees are charged to each student attending the University, the recreation room in the dormitory, and the music building to be constructed, will both be open to use by all students, and that this warrants the charge of the general fee, citing in support of this contention Rheam v. Board of Regents, 161 Okla. 268, 18 P. 2d 535. In that case the special statute under consideration here was not involved, and the only question determined was that the fee there involved was not a fee for tuition. That case does not sustain the right of applicants to obligate themselves to charge the general fees in the

bonds we are now considering. Nor do we express any opinion herein on the power and authority of the Board of Regents to provide for the use of the building and fix a charge therefor.

We therefore conclude that the bonds are not issued in conformity with the provisions of chapter 1a, supra, and we decline to approve them.

In passing, we call attention to the fact that section 3 of chapter 1a, supra, provides that bonds issued under said act shall not be an indebtedness of the institution for which they are issued, or of the Board of Regents thereof, and that the bonds for the music building in the form submitted to us for approval do not so provide.

The time for filing petition for rehearing is limited to five days from the date of filing of this opinion.

Application denied.

HURST, V.C.J., and RILEY, BAYLESS, CORN, and DAVISON, JJ., concur. WELCH, J. dissents.

———

WELCH, J. (dissenting). I think the bonds should be approved. I heartily agree with the rule of law stated in the syllabus, but I cannot see any statement in the bonds indicating any intention on the part of the Board of Regents "to pledge funds derived from *other sources disconnected with the use of such building.*" (Quoted from syllabus.)

There is the provision in the bond itself as quoted in the majority opinion. There is nothing there about funds to be derived from other sources, disconnected with the use of the building. I deem the quoted language in the bond to mean *nothing more nor less* than that if insufficient revenue is derived from operation of the dormitories, that is, from rental of rooms, that fees will be imposed on all students *in keeping with* the provisions of the legislative act, not *in definite violation* of the legislative act.

The legislative act, in section 3, does provide as quoted in the majority opinion that the bonds are "payable only" out of "revenues to be derived from the operation of the building." But see *subsection (f) of the same section* as quoted in the majority opinion.

That means, then, that the bonds may be paid for out of dormitory rental income and if necessary the Board of Regents may fix fees "to be imposed *in connection with* and *for* the use of the building *and the facilities supplied thereby,*" and that such fees, together with all rentals and charges, "shall be considered to be income and revenues derived from the operation of the building."

There is no provision in the act which will authorize the Board of Regents to pledge any funds, in the language of the syllabus rule, "to be derived from *other sources disconnected with the use of such building.*" The act only authorizes the fixing of fees which are *in connection with* and for the use of the building and facilities.

If the Board of Regents supplied the language used in the bond which is quoted in the majority opinion, then surely they intended nothing more than to say that in the event they fixed any fees the same would be fixed as authorized by the statute, and surely they never at any time intended to pledge any *other character of fees.*

If persons intending to be or desiring to become purchasers of the bonds furnished that language, they must have intended the same thing, or at least they knew that the board could not pledge any fees, or at any time in the future fix any fees, other than those fees authorized by the act in connection with and for the use of the building and facilities supplied thereby.

The rule of law adopted in the syllabus does not fit the facts in the case, because the bond does not purport "to pledge any fees derived from any *other sources disconnected* with the use of the building." That latter expression is certainly not used in the bond or resolution and is not there by any implication unless the language actually used is taken as sufficient to indicate an intention on the part of the Board of Regents to go entirely beyond the authority conferred on them by the act. I cannot see that implication in the language used and do not believe that the majority is justified in so doing.

The act is so plain in section 3 and subdivision (f) thereof in stating exactly what may be pledged to pay the bonds that a mistake could hardly be made. The Board of Regents may pledge rental income from the dormitory rooms and also may pledge "fees to be imposed in connection with and for the use of the building and facilities supplied thereby." Under the act the bonds are "payable solely" from these stated sources. Could anyone read therein any authority for "The Board of Regents to pledge funds to be derived from *other sources disconnected* with the use of such building?" Could it rationally be assumed that the Board of Regents had any intention to pledge any such *other* funds or to fix any fees *"disconnected* with the use of such building?" I think not.

It appears to me that nothing whatever was intended but to pledge fees which could properly be fixed under the terms of the act and that we need to read nothing else into the language used in the bond. Since the law is so clear that any such disconnected funds or fees could not be applied to the payment of those bonds, and since it is so clear that the Board of Regents could not fix any such fees, disconnected with

the use of such building, we need have no fears of any attempt, if any attempt should ever be made, to collect any such disconnected fees to pay on these bonds. The Board of Regents is wholly without authority to fix any such disconnected fees, and any attempt to do so would be invalid and would be nullified upon the most casual attack.

Whatever charges or fees the Board of Regents fix, even if they are imposed on all students in attendance at the University of Oklahoma, they must of course be reasonable, and in addition to that, they most definitely must be "imposed in connection with and for the use of the building and facilities supplied thereby," and that is all there is to it. If they do that and go no further, they will be acting within the law, and insofar as they go further or depart from that they will act without authority and will accomplish nothing.

Of course, the bonds and resolution authorizing them make specific reference to the legislative act and the authority thereby conferred, and none should be misled by the language used which should be construed to authorize action in keeping with the authority granted in the legislative act and nothing more.

I think all should agree with the rule of law as stated in the syllabus, but that it has no application because there is no language indicating any desire or intention to make any effort to go beyond the plainly stated authority to provide funds to pay these bonds. The bonds should be approved upon the assumption that no effort will ever be made to so act beyond and without legal authority, with the thought reserved, of course, that any effort to go beyond such authority would be invalid and would be promptly stricken down.