Dear Representative Bastin,
¶ 0 This office has received your letter asking for an official Opinion addressing, in effect, the following question:
When the academic semester of an educational institutionwithin the Oklahoma State System of Higher Education beginsbefore the effective date of a statute which increases the limitsplaced upon the tuition rates that the Oklahoma State Regents forHigher Education are authorized to establish, may the StateRegents, acting under the provisions of Article XIII-A, § 2 ofthe Oklahoma Constitution, 70 O.S. 1991, § 3206(e) and 70O.S. Supp. 1996, §§ 3218.8[70-3218.8], 3218.8a and 3218.9, establish —prior to the beginning of the semester tuition rates which consist of two blended elements: (1) A rate based on existing tuition limits which controls until the effective date of the statute increasing the tuition limits, and (2) an enhanced rate consistent with the increased tuition limits, which takes effect after the effective date of the enactment which increased tuition limits?
 I. GENERAL POWER OF THE OKLAHOMA STATE REGENTS FOR HIGHER EDUCATION TO ESTABLISH TUITION RATES FOR ALL INSTITUTIONS WITHIN THE OKLAHOMA STATE SYSTEM OF HIGHER EDUCATION
¶ 1 Under the provisions of Article XIII-A, § 1 of the Oklahoma Constitution, "[a]ll institutions of higher education supported wholly or in part by direct legislative appropriations" are made "integral parts" of a uniform system known as "The Oklahoma State System of Higher Education."
¶ 2 Article XIII-A, § 2 of the Oklahoma Constitution establishes the Oklahoma State Regents for Higher Education ("State Regents") as "a co-ordinating board of control for all State institutions" within the Oklahoma State System of Higher Education, and empowers the State Regents to, among other things, "prescribe standards of higher education applicable to each institution," and further provides that the State Regents "shall have the power to recommend to the Legislature proposed fees for all such institutions, and any such fee shall be effective only within the limits prescribed by the Legislature."
¶ 3 Mirroring this last constitutional mandate, 70 O.S. 1991,§ 3206[70-3206] provides, in pertinent part, that the State Regents:
 [S]hall have the power to recommend to the Legislature proposed fees for all such institutions, and any such fees shall be effective only within the limits prescribed by the Legislature, after taking due cognizance of expressed legislative intent.
70 O.S. 1991, § 3206[70-3206](e).
¶ 4 More specifically, the State Regents, in Title 70 at Sections 3218.8, 3218.8a, and 3218.9, are empowered to actually "establish general enrollment fees" within the limits set by the Legislature.
 II. HOUSE BILL 1921'S INCREASE OF TUITION LIMITS
¶ 5 The question you pose relates to the recent enactment of House Bill 1921, 1997 Okla. Sess. Laws Serv. ch. 303 (West), which increased the limits placed upon the tuition that could be set by the State Regents. Even though Section 7 of House Bill 1921 stated that it "shall become effective July 1, 1997," because the bill lacked an emergency clause under the mandate of Article V, § 58 of the Oklahoma Constitution, it did not become effective until "ninety days after the adjournment of the [legislative] session." As the Legislature adjourned, sine die
on May 30, 1997, House Bill 1921 became effective on August 29, 1997. This effective date was after the beginning of the Fall semester at the majority of the institutions within the State Regents' purview.
¶ 6 House Bill 1921 amended three statutory provisions by increasing the caps placed upon the amount of tuition that could be established by the State Regents: First, under its general power, second, under its power to establish rates for technical institutions, and third, under its power to establish rates for medical institutions.
¶ 7 Section 1 of House Bill 1921 amended Section 3218.8 of Title 70, under which the State Regents generally establishtuition rates, by increasing the tuition rate caps. For example, under subsection A, the general tuition rate caps which can be established by the State Regents were increased as follows:
 Except as otherwise provided by law, the Oklahoma State Regents for Higher Education are authorized to establish general enrollment fees per semester credit hour which shall not exceed:
Lower Division
Comprehensive Universities $52.00 $56.50
Regional Universities $43.00 $46.00
Two-year Colleges $28.00 $29.50
Upper Division
Comprehensive Universities $55.50 $60.00
Regional Universities $44.00 $47.00
Graduate Division
Comprehensive Universities $73.50 $80.00
Regional Universities $58.00 $62.00
1997 Okla. Sess. Laws Serv. ch. 303, § 1(A) (West) (amending70 O.S. Supp. 1996, § 3218.8[70-3218.8]).
¶ 8 At Section 2, House Bill 1921 increased the tuition which could be set by the State Regents at technical institutions, as exemplified by subsection A thereof:
 Except as otherwise provided by law, the Oklahoma State Regents for Higher Education are authorized to establish general enrollment fees and nonresident tuition per semester credit hour for Oklahoma State University Technical Branches at Okmulgee and Oklahoma City which shall not exceed:
 Oklahoma State University Technical Branch at Okmulgee
General enrollment fee $40.00 $41.00
Nonresident tuition $72.50 $74.50
Oklahoma State University Technical Branch at Oklahoma City
General enrollment fee $40.00 $41.00
Nonresident tuition $72.50 $74.50
1997 Okla. Sess. Laws Serv. ch. 303, § 2 (West) (amending 70O.S. Supp. 1996, § 3218.8a[70-3218.8a]).
¶ 9 In like fashion, Section 3 of House Bill 1921 increased the tuition which could be imposed by the State Regents at medicalinstitutions, as demonstrated by the first portion of that section:
 The Oklahoma State Regents for Higher Education are authorized to establish general enrollment fees and nonresident tuition for the following courses and programs in amounts not to exceed the following limits:
Course or Program Limit
Allopathic Medicine Students
General enrollment fee $3,775.50 $4,342.00
per semester
Nonresident tuition $5,554.50 $6,388.00
per semester
1997 Okla. Sess. Laws Serv. ch. 303, § 3 (West) (amending 70O.S. Supp. 1996, § 3218.9[70-3218.9]).
¶ 10 Until the effective date of these legislative changes made by House Bill 1921, the old tuition limits — the limits crossed out in the Session Law sections quoted above — were the controlling limits on the State Regents' powers. The only restriction imposed by these limits is that any tuition established by the State Regents not exceed the statutory caps. As noted above, because no emergency clause was attached to House Bill 1921, the older lower tuition caps were effective until August 29, 1997, and the higher, newer tuition caps provided for in House Bill 1921 became effective on August 29, 1997.
 III. THE BLENDED TUITION RATES ESTABLISHED BY THE STATE REGENTS WERE WITHIN THE TUITION LIMITS ESTABLISHED BY THE LEGISLATURE
¶ 11 The tuition rates established by the State Regents in June of 1997 consisted of two elements:
 1. A rate based on the lower tuition caps which controlled until the effective date of the statutes increasing the tuition limits, and
 2. An enhanced rate consistent with the increased tuition limits, which took effect after the effective date of the enactment increasing tuition limits.
¶ 12 These two elements were then combined to form a blended rate. For example, if the lower rate under the old tuition cap were $50.00, it would apply until the effective date of the increased rate of $52.00, which would be applied on the new law's effective date and thereafter for the rest of the semester. Applying these rates on a pro rata basis (based on the number of days in the semester), the two elements would be combined into a blended, single rate, which in this example might be $51.25.
¶ 13 The blended tuition rates established by the State Regents in June of 1997 were within the State Regents' power to adopt and did not exceed the statutorily imposed tuition caps. In Rheam v.Board of Regents, 18 P.2d 535 (Okla. 1933), the Oklahoma Supreme Court considered a challenge of a $2.50 entrance fee established by the Board of Regents of the University of Oklahoma. Upholding the fee, the Supreme Court reasoned that because the University's Board of Regents had the implied power to do everything necessary and convenient to the objectives for which the institution was founded — where not prohibited, either expressly or impliedly by law — the members of the Court were "not required to look for grants of power to the Board of Regents of the University, but for limitations on its power, in order that we may determine whether or not the act of the defendants [the Board of Regents] in question in this case has been prohibited" Id. at 539.
¶ 14 Finding no prohibition, the Rheam Court upheld the fee established by the University's Board of Regents. While that case dealt with a university's board of regents entrusted with the "government" of the university, and not the "co-ordinating" State Regents, the analysis used by the Court is equally applicable in the case at hand, because the State Regents, as noted above, have been expressly empowered to "establish general enrollment fees," 70 O.S. Supp. 1996, §§ 3218.8[70-3218.8], 3218.8a, and 3218.9, and because the State Regents are expressly empowered to "[e]xercise all powers necessary or convenient to accomplish the purposes and objectives of Article XII-A of the Constitution of Oklahoma." 70 O.S. 1991, § 3206[70-3206](m). The State Regents, having the express power to establish general enrollment fees, and further being vested with "all powers necessary or convenient" to the accomplishment of the "purposes and objectives of Article XIII-A
of the Constitution of Oklahoma," is in a similar position to that of the Regents for the University of Oklahoma inRheam.[1]
¶ 15 Following the analysis used by the Court in the Rheam
case, we look to see what limitations have been placed upon the State Regents' power to establish tuition rates. The only limits on the tuition rates which the State Regents may establish are the caps contained in the statutes discussed above. The blended rates established by the State Regents did not violate those tuition caps, for under the blended rates, the rates charged students until the August 29, 1997, effective date of the new caps were within the tuition caps of the former statute, and the rates charged after the effective date of the increase in the tuition caps, were within those newly established limits. In short, under the blended rate structure established by the State Regents, the tuition charged students on any given date throughout the semester, complies with the tuition cap effective on that date. Because the blended tuition rates established by the State Regents are only limited by the statutorily imposed tuition rate caps, and because the blended tuition rates established by the State Regents comply with those limits, the Regents were empowered to establish such rates. In reaching this conclusion, we express no opinion on whether the State Regents followed the prescribed procedures in establishing the blended tuition rates or whether the establishment of such rates violates any existing contracts, as such matters are factual issues, which may not be addressed in an Attorney General's Opinion.
¶ 16 It is, therefore, the official Opinion of the AttorneyGeneral that:
 When the academic semester of an educational institutionwithin the Oklahoma State System of Higher Education begins afterthe effective date of a statute which increases the limits placedupon tuition rates which the State Regents for Higher Educationmay establish, the State Regents, acting under the powers vestedin it to establish general enrollment fees under the provisionsof Article XIII-A, § 2 of the Oklahoma Constitution, 70 O.S.1991, § 3206(e) and by 70 O.S. Supp. 1996, §§ 3218.8,3218.8a and 3218.9, may establish — prior to the start of thesemester — tuition rates which consist of two blended elements:(1) a rate based on existing tuition limits which controls untilthe effective date of the statute increasing the tuition limits,and (2) an enhanced rate consistent with the increased tuitionlimits, which take effect after the effective date of theenactment which increased tuition limits.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
NEAL LEADER SENIOR ASSISTANT ATTORNEY GENERAL
[1] The powers are the same, the difference is the source of the power. In Rheam the University Regents' powers were derived from the Constitution and implied powers based on the Constitution, where as in the case at hand, the same powers are expressly vested in the State Regents by the Legislature.