Application of BOARD OF REGENTS OF UNIVERSITY OF OKLAHOMA.

No. 33684. June 30, 1948.

*195 P. 2d 936.*

Mac Q. Williamson, Atty. Gen., and Mainard Kennerly, Asst. Atty. Gen., for the Board of Regents of the University of Oklahoma.

WELCH, J. The Board of Regents of the University of Oklahoma, upon authority of the statutes (S. L. 1947, Title 70, chap. 45e, §§1, 2, and 70 Okla. Stat. Ann. §§2071 and 2072, and S. L. 1945, Title 70, chap. 1a, sec. 3; 70 Okla. Stat. Ann. §2073), adopted a resolution on May 25, 1948, providing for construction of an extensive power and heating plant on the campus of the University, to furnish complete service coverage for the University with its numerous buildings and departments, for the benefit of the entire student body, and providing for the issuance and sale of bonds in the sum of $1,800,-000 to cover cost of the plant, and providing in detail for the collection of student fees for payment of the bonds, and providing for funds for maintenance and operation of the plant or system.

Thereafter the said Board of Regents, as authorized by statute (S. L. 1945, Title 70, chap. 1a, sec. 9, 70 Okla. Stat. Ann. § 2079), filed application in this court for approval of such bond issue, to be known as "Regents of the University of Oklahoma Power and Heating Plant bonds of 1948." Due notice was given that said application would be presented to the court on June 22, 1948. No protest against the issuance of the bonds has been filed and no one has appeared in opposition to the application for approval. We are favored with a brief by the Attorney General in support of the application.

The resolution of the Board of Regents is quite comprehensive, complete as to detail, and fully adapted to the purpose to be served. There is provision for the setting aside of the necessary portion of the campus for the plant and system; for the bonds to be issued aforesaid; for the exact form and denomination, maturity date and interest rate on each bond; for the exact method of signing issuance, registration and sale of the bonds; for the creation, collection, handling and expenditure of the bond fund for payment of the bonds; provision for the separate maintenance and operating fund; with specific provision that the bond issue shall not create any debt or obligation of the state or the University or of the Board of Regents; that the bonds shall be paid only out of the fund created by assessment and collection of student fees, with certain specified net earnings of the power plant; that specified insurance shall be carried on the plant or system; that no additional or conflicting bonds will be issued payable from the revenues of this system above referred to, nor will the Board of Regents sell or mortgage or encumber the system or any part thereof so long as any of these bonds remain outstanding.

With the foregoing statement we deem it unnecessary to copy the resolution in full, but will refer to such portions thereof as we deem pertinent to our consideration of the application for approval.

Section 7 and the material parts of section 8 of the resolution are as follows:

"Section 7. That for the purpose of this resolution the Power and Heating plant to be constructed and equipped with the proceeds of the bonds herein authorized, together with all existing power and heating plant equipment and related facilities now owned and operated by the University and not to be replaced by the plant to be constructed hereunder, and together with all improvements, repairs and additions thereto or substitutions therefor which may be made while any of the bonds herein authorized remain outstanding are referred to as 'the system.' The bonds

herein authorized are hereinafter sometimes referred to as 'bonds.'

"Section 8. That the revenues to be derived by the University from the operation of the system shall, for the purposes of this resolution, be considered to be the following:

"(a) A student fee to be charged and collected from every student in attendance at the University of Oklahoma at the regular or summer sessions of the University, for the availability of services, power, and heat in such amount per student in each bond year as will produce for such bond year (the bond year for the purpose of this resolution being a year commencing on **July 1** of each year and ending on **June 30** of the following year) not less than the sum of $145,515.

"(b) All other revenues to be derived from the operation of the system, including all fees and charges which may be made against the auxiliary enterprises of the University for services, power, and heat supplied by the system of such enterprises, and including the revenue derived from such student fee (supplemental and in addition to the fee described in Paragraph (a) as may at any time be necessary to be imposed to pay maintenance and operation expenses as hereinafter provided) The revenues to be derived pursuant to the provisions of this Paragraph (b) are hereinafter referred to as 'the general revenues.' If at any time the general revenues shall prove to be insufficient to pay the necessary expenses of operating and maintaining the system, including the cost of insurance and necessary replacements, renewals and repairs, the Board of Regents may in its discretion make up such deficiency through the application to such purpose of money currently available from the general operating and maintenance funds of the University, and if funds are not so applied, or if the funds so applied are insufficient, then any remaining deficiency shall be made up from the proceeds of an additional student fee to be charged and collected from every student in attendance at the University for the availability of power and heat, which fee shall be in addition to the fee mentioned in Paragraph (a) above and shall be in an amount sufficient to pay all necessary expenses of maintenance and operation for which the funds hereinabove specified in this paragraph may prove insufficient, but not in excess of such amount. All of the general revenues not so used for maintenance or operation of the system, or for extensions, additions or improvements, and all of the student fees for which provision is made in Paragraph (a) hereinabove are hereby irrevocably pledged to the payment of principal of and interest and redemption premiums on the bonds."

The statutes of Oklahoma (S. L. 1947, Title 70, chap. 45e, secs. 1 and 2, 70 Okla. Stat. Ann. §§2071 and 2072) specifically authorize the Board of Regents of the University to construct and install such an improvement as is here involved, with complete authority in that Board to issue and sell bonds to cover the cost of such improvement.

Among other procedural steps that Board is authorized to make application to this court for approval of such bond issue, and it is the duty of the court to determine the questions presented and approve the bonds if they have been properly authorized so as to constitute valid obligations in accordance with their terms.

The application for approval of this bond issue presents three specific questions:

"(1) Whether a student fee can be pledged and collected for the purpose of paying principal of and interest on the bonds until all bonds and interest due thereon are paid.

"(2) Whether a student fee may be imposed and collected during construction of the power and heating plant to meet interest and principal requirements during said period.

"(3) Is the Bond issue a debt of the State by reason of provision in Section 8b of Resolution which states that the Board of Regents may in its discretion make up deficiency of revenue necessary for operation and mainte-

nance through application of money currently available from general operating and maintenance funds of the University?"

As to the first question, the statute (S.L. 1947, Title 70, chap. 45e, sec. 1; 70 Okla. Stat. Ann. §2071) specifically authorizes the fixing and charging of student fees for such an improvement "when in the opinion of the Board of Regents . . . any such . . . plants and systems . . . are deemed necessary by the said Board for the comfort, convenience and welfare of the student body as a whole."

The resolution of the Board of Regents providing for this bond issue contains an express finding by the Board in accordance with the above-quoted portion of the statute. And the purpose and plan of this construction as set out in the resolution demonstrates conclusively that such finding by the Board is justified.

The general authority of the Board of Regents to exact student fees for proper purposes is fully recognized and well known. Rheam v. Board of Regents, 161 Okla. 268, 18 P. 2d 535. The resolution above referred to points out specifically the imperative necessity for this improvement for the comfort, convenience and welfare of the student body as a whole. It seems beyond any question that the need for this plant and system is demonstrated and that the plan and purpose is one wholly reasonable. We conclude that it is within the authority of the Board of Regents to charge and collect student fees for the purpose of paying the principal of and interest on these bonds. And since the fees may be charged and collected from the students and thereafter paid out to the bondholders, it follows as a necessary part of such a financial plan that the Board must possess the incidental power to pledge the funds collected as student fees to the payment of the principal of and interest on the bonds. There could be no such bond issue without some promise and pledge for payment, and such a specific pledge

as is here referred to is all the more essential in such a bond issue as this, where the bonds are not general obligations of the University or of the state. The bond form presented as a part of the application discloses that each bond of this issue will contain as a part thereof the following statement:

"This bond is not an indebtedness of the State of Oklahoma or the University of Oklahoma or the Board of Regents of the University of Oklahoma, but is a special obligation payable solely from the aforesaid revenues."

We conclude that student fees may legally be pledged and collected for the purposes stated, and the first question is answered in the affirmative.

As to the second question above quoted, one would readily recognize the need for the collection of student fees during construction of the power and heating plant. That would be necessary in order to properly carry forward the financial plan, and promote prompt payment of each item of principal and interest at its maturity, which is one of the prime necessities, or one of the essentials of normal bond issue financing. In case of voted bonds for municipal construction projects, tax levies are commenced without regard to the time when the construction will be completed, and while that situation differs from the one here, it does bear some analogy. In fact the timely commencement of the current plan for creation of funds to pay the principal and interest on issued bonds is a universal policy, benefiting not only the bondholder, but the bond project as well.

It seems clear that the charging and collection of student fees, after issuance of the bonds, but before final completion of the plant, bears a reasonable relation to the over-all project, and to the benefit of the student body as a whole. It would seem paradoxical to say that such fees could be charged and collected to cover costs of constructing such a plant, but that none could be charged or collected until after

the plant was completely constructed, installed and furnishing service. The collection of such student fees at the time here considered is an integral part of the entire plan of issuing bonds and constructing the plant, and the commencement of such collection takes its proper place in relation to the whole project, from and after the issuance of the bonds, without regard to the time when the physical installation of the plant may be actually and fully completed.

We conclude that the contemplated student fees for the payment of the principal and interest on the bonds may be imposed and collected after issuance of the bonds and during the construction period of the plant, and we answer the second question in the affirmative.

As to the quoted question No. 3, we assume all would agree this bond issue could in no sense be a debt of the state in the absence of the discretion to make the stated application of money from the general operating and maintenance funds of the University.

In that event, beyond any possible question, the bonds would be, as stated in each bond, "payable from the net revenues" of plant operation and student fee collections, and "a special obligation payable solely from the aforesaid revenues" and "not an indebtedness of the State of Oklahoma or the University of Oklahoma or the Board of Regents." Baker v. Carter, 165 Okla. 116, 25 P. 2d 747; In re Application of Board of Regents, University of Oklahoma, 195 Okla. 641, 161 P. 2d 447; In re Application of Board of Regents, Agricultural and Mechanical Colleges, 196 Okla. 622, 167 P. 2d 883; State ex rel. Kerr, Gov., v. Grand River Dam Authority, 195 Okla. 8, 154 P. 2d 946, and Sheldon v. Grand River Dam Authority, 182 Okla. 24, 76 P. 2d 355.

So the question presents itself whether a change results because of the discretion to apply state money, above referred to. But this is not a discretion to apply state money to the payment of any part of the principal or interest on the bonds. On the contrary, as shown by the quoted portion of section 8 of the resolution, this is a discretion to apply this state money to "the necessary expenses of operating and maintaining the system, including the costs of insurance and necessary replacements, renewals and repairs." This is wholly different from applying or using state money to pay on the bonds. This is an application of state money that would be necessary in the operation by the state of a state-owned heat and power plant no matter how the plant had been acquired. If such a plant should be donated to the state, or sold to the state for money appropriated by the Legislature, the application thereafter of state money to the operation of the plant or for insurance and replacements and repairs, would not in any sense be an application of such state money to or for the benefit of the donor or vendor, nor would it be an application of such state money in any manner in, or connected with, the acquisition of the plant.

So we conclude that this contemplated discretionary application of state monies has no direct connection with the bond issue. Since this money specifically cannot be applied or payment of any part of the bonded debt, it of course is not mentioned in the bonds themselves. It might properly be a part of the resolution of the Board of Regents and is a forthright statement of the plans of the Board for continued operation of the plant, but it cannot at all be said to affect the bonded debt so as to make it or any part of it an obligation of the state or a debt against the state.

Furthermore, this is not an unbridled discretion of the Board of Regents. As disclosed by the resolution, there are other plans for providing operating expenses. And it is only after such other plans result in a deficit of operating revenue that the Board of Regents may even consider whether they should make the recited application of state

money. And if in their discretion they do apply state money it can be applied only sufficiently to cover the operational deficiency specifically set out. Any state money so applied does not become a part of the "general revenues" referred to in the resolution.

Thus by analysis of the plan and its detail it is conclusively demonstrated that this discretion to apply state money for the purpose specifically stated, but for no other purpose, does not in any manner affect the bond debt and does not cause the bond debt nor any part of it to be a debt or obligation of the state, and we answer the stated question No. 3 in the negative.

As to this bond issue the procedural steps have been properly taken. The bonds have been properly authorized in accordance with the applicable legislative act and when issued they will constitute valid obligations in accordance with their terms.

As to this over-all plan we deem it proper to say in the words of this court in Baker v. Carter, supra:

" . . . we are not concerned with its propriety, desirability, wisdom or its practicability as a working proposition. Those questions are clearly and definitely established by our fundamental law to a certainty as functions of the legislative department of government. The function of the court is clearly limited to the determination of the validity or invalidity of the act. . . ."

We here mean no condemnation or even criticism of this plan. We only desire to make it plain that we confine this opinion to the proper judicial function of approving that which is clothed with proper and required legal form, is based upon lawful purpose, projected on a plan legally provided for, which bears no mark or sign of invalidity, and when all questions as to validity are resolved to the satisfaction of this court.

Therefore, the court approves the issuance of Regents of the University of Oklahoma Power and Heating Plant Bonds in the amount of $1,800,000 proposed to be issued pursuant to the provisions of the statute, supra, and upon resolution adopted by the said Board of Regents on May 25, 1948.

HURST, C.J., DAVISON, V.C.J., and ARNOLD and LUTTRELL, JJ., concur. CORN and GIBSON, JJ., dissent.

---

GIBSON, J. (dissenting). I am of the opinion that under authority of Title 70, sec. 2, chap. 1a, S. L. 1945, as amended by Title 70, sec. 2, chap. 45e, S. L. 1947, only self-liquidating projects can be erected. In the matter under consideration it is obvious that the Board of Regents of the University of Oklahoma does not intend to build and operate a power and heating plant which will pay for itself from income from its operation including students' fees. The resolution authorizing the issuance of the bonds, etc., provides for the Board, in its discretion, to use money allocated and appropriated to the University out of the General State Revenues for the purpose of paying deficits arising from the operation and maintenance of the project.

The resolution also contemplates the collection of fees and charges from "auxiliary enterprises of the University for services, power and heat supplied by the system to such enterprise". Provision is made that these fees and charges may be used to pay the cost of insurance, replacements, renewals and repairs of the utility.

The resolution does not disclose of what "auxiliary enterprises of the University" consist. If these enterprises are sustained solely out of the state revenues any payments for services, power and heat by such enterprises would be a further contribution of state funds to the income from the operation of the power and heating plant.

With such provisions for the payment of operation, maintenance and replace-

ment costs, the project is not self–liquidating. If the utility is not self–liquidating I think it is beyond the power of the Board of Regents to borrow money to pay for its construction costs. The project being unauthorized, the bonds are invalid.

This being my view I see no reason to discuss the propriety or authority of the Board to exact fees from the students for the next eighteen months, that being the period of time, we are told, which will be necessary for the construction of the utility, and during which period, of course, the student will receive no benefit from the fees exacted from him, except to say that Rheam v. Board of Regents, etc., 161 Okla. 268, 18 P. 2d 535, is not authority for the Board to collect such fee during that period.