Application of BOARD OF REGENTS, OKLAHOMA AGRICULTURAL AND MECHANICAL COLLEGES FOR "UTILITY SYSTEM REVENUE BONDS, SERIES 1948."

No. 33783.    Dec. 14, 1948.

*200 P. 2d 901.*

Mac Q. Williamson, Atty. Gen., Mainerd Kennerly, Asst. Atty. Gen., Stephen D. Holloway, of Oklahoma City, and John C. Monk, of Stillwater, for the Board of Regents.

WELCH, J. The Board of Regents for Oklahoma Agricultural and Mechanical Colleges has filed in this court an application for approval of a series of bonds proposed to be issued under the provisions of chapter 1a of Title 70, Session Laws of Oklahoma 1945, as amended by chapter 45e of Title 70, Session Laws of Oklahoma, 1947 (70 Okla. Stat. Ann. §§2071, 2072, 2073; 70 O. S. Supp. 1947 §§2071, 2072, 2073.)

The Board, by resolution adopted July 29, 1948, provided that the existing utility system of Oklahoma Agricultural and Mechanical College should be improved and extended through the acquisition of a water supply system, including transmission, treatment and pumping facilities, improving and extending the water distribution system, and improving and extending the power and heating plant system in accordance with stated plans, specifications and estimates; that for the purpose of paying the cost of improving and ex-

tending such utility system there should be borrowed on the credit of the income and revenues to be derived from the operation thereof, the sum of $3,000,-000, and that to evidence the sum so borrowed and in anticipation of the collection of such income and revenues there be issued the negotiable bonds of the Board of Regents for the Oklahoma Agricultural and Mechanical Colleges in the total principal sum of $3,-000,000; that said bonds be known as "Utility System Revenue Bonds, Series 1948," and be dated September 1, 1948, and be issued in the denominations of $1,000, to be numbered 1 to 3,000, inclusive.

The resolution provides that the revenues to be derived by the Board of Regents from the operation of the system shall be the proceeds from student fees, a fee to be charged every student in attendance at the regular or summer sessions of the College for the use or availability of the services afforded by the system and the proceeds and income derived from the sale of the products and services thereof, sales to be made only when a surplus exists or after all the institution's needs have been met. It is provided that all such revenues shall be used for the maintenance and operation of the utility system and to pay interest, principal and redemption premiums on the bonds.

The resolution provides for the form of each of the bonds to be issued and that each bond shall bear the following recitation:

"This bond is one of an issue of $3,-000,000 bonds of like date and tenor, except as to number, interest rate, maturity and option or redemption, issued for the purpose of improving and extending the utility system of the Oklahoma Agricultural and Mechanical College, and payable from the net revenues to be derived from the operation of said system, including the proceeds of student fees to be charged all students in attendance at the college, under and pursuant to the Constitution and statutes of Oklahoma, and particularly Chapter 1a of Title 70, Ses-

sion Laws of 1945, as amended, and pursuant to resolution duly adopted by the Board of Regents for the Oklahoma Agricultural and Mechanical Colleges on July 29, 1948, to which resolution reference is hereby made for a statement of the funds and revenues from which said issue of bonds is payable.

"This bond is not an indebtedness of the State of Oklahoma or the Oklahoma Agricultural and Mechanical College or the Board of Regents for the Oklahoma Agricultural and Mechanical Colleges, but is a special obligation payable solely from the aforesaid revenues."

This application for the approval of the bonds to be issued is authorized by statute (S. L. 1945, Title 70, ch. 1a, §9, 70 Okla. Stat. Ann. §2079; 70 O. S. Supp. 1947 §2079) and has been filed in accordance therewith and due notice of hearing on the application has been given as provided. It is the duty of this court, if satisfied that the bonds have been properly authorized in accordance with the statutes mentioned in the first paragraph herein, and that the bonds when issued will constitute valid obligations in accordance with their terms, to approve the bonds.

The statutes, supra, specifically authorize the Board of Regents of Oklahoma Agricultural and Mechanical Colleges for and in behalf of the Oklahoma Agricultural and Mechanical College to construct and install a utility plant and system as is here involved of a capacity not in excess of the present and reasonably contemplated future needs of the institution, to issue and sell bonds to cover the cost thereof, and to charge and collect student fees for the use or availability of the services made available by such plant and system, and where the services supplied by any such plant and system temporarily shall be found to be in excess of the requirements of the College, to sell the surplus to other public or nonprofit consumers and to pledge the revenues to be derived from such fees and such sales to the payment of such bonds. In re Application of Board of Regents of University of Oklahoma, etc., 200 Okla. 442, 195 P. 2d 936.

Section 2071, supra, which authorizes the Board of Regents to acquire utility plants and systems for the College when deemed necessary by said Board, for the comfort, convenience and welfare of the students, contains the following proviso:

"(Provided, that such Board of Regents shall not construct or acquire, for their respective institutions, such utility plants or systems whose capacity is in excess of the present or reasonably contemplated future needs of such institution.)"

The following question is here presented:

Is the Board of Regents for the Oklahoma Agricultural and Mechanical Colleges acting within its authority in authorizing the construction of the water supply system to be financed with a part of the proceeds of the bonds, of the size and capacity of the water supply system proposed to be constructed?

We are favored with a report and survey of the present water supply system available and in use by the Agricultural and Mechanical College and a report and survey of the project authorized by the Board of Regents verified by a well known engineer of recognized high professional standing. It is shown that the source of supply of raw water available to the facility now serving the College is failing, and that the equipment for treating the water is such that the pressing water needs of the College are not being met and cannot be met by the present facility. The large increase in student enrollment and enlargement of the physical plant of the institution is shown and the consequent increase of the water needs of the institution and the overall present water needs of the institution. The plans, specifications and estimates of the proposed construction are shown and the estimates of the water supply to be made available thereby. It is apparent that some future growth in enrollment and growth in the physical plant of the college is reasonably to be expected.

It is unnecessary to copy herein the sworn statement above mentioned or set out in detail the information contained in said statement. As to water, the proposed plant will not only serve the College campus, but will deliver sufficient water to serve auxiliary, and collateral needs of the College off the campus itself, but in proximity thereto. Frank disclosure is made of such purpose with detailed showing as to the extent thereof, and the definite need of the College itself, its students, its teachers, and its widespread activities for all such furnishings of service beyond the campus boundaries.

We find that this furnishing of service, though off the campus itself, is well within the reasonable needs and necessities of the College itself and there appears no abuse of discretion in the conclusion of the Board of Regents that such utility and such service is necessary for the comfort, convenience and welfare of the students of A. & M. College (70 O. S. Supp. 1947 §2071).

It is sufficient to say that upon the evidence submitted, we find that the size and capacity of the water supply system proposed to be constructed is not in excess of the present and reasonably contemplated future needs of the institution, and from the showing made it does not appear that the proposed improvement and extension of the power and heating plant and system of the college will increase its size and capacity beyond the present and reasonably contemplated future needs of the institution.

Pending growth and development of the College to its maximum size and enrollment as envisioned in the resolution, it is contemplated by the Board of Regents that the proposed water plant will fully serve the College, and will also deliver a present surplus of water which can and will be sold to the city of Stillwater. The statutes above cited, authorizing such a revenue bond issue, make provision for the sale of such a surplus, and we find the contemplated purpose here to be fairly and reasonably within the statutory authorization.

We conclude that the Board of Regents was acting within is authority in authorizing and providing for construction of the water supply system of the size and capacity proposed to be constructed, and in authorizing the improvement and extension of the power and heating plant and system of the College, all to be financed with the proceeds of the bonds here involved.

We are satisfied that the bonds involved herein have been properly authorized in accordance with the statute first mentioned herein and that when issued the bonds will constitute valid obligations in accordance with their terms. We therefore approve the issuance of the Board of Regents for the Oklahoma Agricultural and Mechanical College Bonds, designated "Utility System Revenue Bonds, Series 1948" in the principal sum of $3,-000,000 proposed to be issued pursuant to the provisions of the statute, supra, and upon resolution adopted by the said Board of Regents on July 29, 1948.

Our attention is directed to language in the resolution as to use of surplus of revenue from the operation of the utility here involved. In that connection we observe that the statute under which these bonds are issued is specific as to the uses to which such revenue may be devoted. 70 O. S. Supp. 1947 §2076. We do not find in this resolution any desire or intention on the part of the Board of Regents to depart from the statutory or lawful use of this revenue.

These bonds are issued on the theory that the law will be complied with as to the use of all revenue from the utilities involved, and are approved by this court on the same theory.

It is ordered that any person desiring to file petition for rehearing herein must file such petition within seven days.

HURST, C. J., DAVISON, V. C. J., and CORN, ARNOLD, and LUTTRELL,

JJ., concur. RILEY, BAYLESS, and GIBSON, JJ., dissent.

---

GIBSON, J. (dissenting). I am unable to agree with the majority of my associates that this court should place its stamp of approval on the $3,000,000 of bonds to be issued purportedly for the acquisition and erection of a water supply system and for improving and extending the power and heating plant system of the Oklahoma Agricultural and Mechanical College at Stillwater.

No words can sufficiently describe the nature and purpose of the bond proceedings and at the same time conceal the fact that the water supply system is being acquired and erected to supply the needs of the city of Stillwater as well as those of the College.

In fact, the bond proceedings attempt no such concealment for therein is contained a report from Colonal Donnell in which the reasons for the College undertaking the expansion are disclosed, and it is further stated:

"After this decision on the part of the College, the Commissioners of the City of Stillwater realized that it would be to our mutual advantage for them to become a party to the project and to this end a contract has been arranged which will supply income as indicated in Paragraph 4 of the contract, Exhibit 'E',"

And the engineer's report contains the following:

'5. The proposed contract for sale of water to the City of Stillwater is attached as Exhibit 'E'.

"Features of the contract are that the City agrees to pay the College a minimum of $76,000 annually, that water will be delivered to the City at the nearest point in their distribution system, that maximum demand by the City shall not exceed 6,000,000 gallons per day, and that the term of the contract is 25 years with renewal provisions. . . .

"It is expected that the City will shut down their present plant, keeping it intact for emergencies, as with the minimum payment required it will be most economical for the City to purchase all of its treated water. . . ."

Incidentally, the cost of this utility, which is to be constructed sufficient in size and power to enable it to supply the water needs of the city of Stillwater for a period of 25 years "with renewal provisions", is to be defrayed in part out of revenues derived from

"(a) A student fee to be charged and collected from every student in attendance at the Oklahoma Agricultural and Mechanical College at the regular and summer sessions of the College, for the use or availability of the services and facilities to be afforded by the system, in such amount per student as will make the proceeds thereof fully sufficient to carry out all of the requirements of this resolution.       .

"(b) All other revenues . . . including the revenue to be derived from such student fees (supplemental and in addition to the fees described in paragraph (a) above) as may at any time be necessary to be imposed to pay maintenance and operation expenses as hereinafter provided. . . ."

It may be conceded that a student fee may be imposed for the erection of a facility for the use and enjoyment of such student, but never before has it been held that a student fee may be imposed for the part payment of the cost of construction of a utility erected for the purpose of supplying the water needs of the students and in addition the water needs of a city for a period of 25 years with renewal privileges.

In my opinion the wisdom and desirability of the proposed enterprise, considered from the standpoint of the evident advantages to be enjoyed by the College and the city of Stillwater as the beneficiaries, can afford no justification for the bond issue unless such enterprise can and is to be accomplished within the limits of the authority granted the Board of Regents under the law. And, such being true, the power of this court to approve and thereby give finality to any question

concerning the validity of the bonds can be properly exercised only where it appears to the court that the authority of the Board to act as it proposes to do is manifest.

An express limitation upon the authority of the Board appears in the following words of the statutes (Tit. 70, O. S. A. 1941, Supp. 1947 §2071):

"(provided, that such Boards of Regents shall not construct or acquire, for their respective institutions, such utility plants or systems whose capacity is in excess of the present or reasonably contemplated future needs of such institutions)."

The majority opinion states that under said section 2071 the Board of Regents may acquire utilities "for the comfort, convenience and welfare of the students." With that I agree, but that section does not authorize the erection of a utility to furnish services to an independent municipality for 25 years with renewal privileges.

It is obvious from the papers on file herein that the capacity of the proposed water system is not deemed by the Board to be not in excess of the present and contemplated future needs of the College. In the application for approval of the bonds, filed on its behalf, is the following statement:

"Applicant considers these facts as establishing the water needs of the Oklahoma Agricultural and Mechanical College as being no less than sufficient water for the entire college — City Community."

This language alone is sufficient to negative any contention that the needs of the College only are made the basis for the capacity of the utility to be provided unless it can be concluded that the city, under the circumstances, is, in substance, an adjunct of the College. Such conclusion could not obtain by reason of the facts and, a thing which is equally important, that the Board entertained no such thought is reflected by the further fact it is contemplated that the service to be provided is to be sold to the city as a separate entity to be by it distributed to its customers.

The authority of the College to sell its surplus is not questioned but its power in such respect is limited to what in terms of the statute is a temporary surplus, not one designed to continue for 25 years or longer. The surplus contemplated by the statute can be none other than that afforded by the excess of capacity for future needs over that required for present needs of the College. Such is not the situation here where the College needs are expressly combined with the city needs for 25 years or longer in determining the size of the bond issue and the capacity of the water system. In such circumstances the product of the utility over and above the needs of the College is not a surplus, but the over-supply is designedly produced so that it may be sold to the city of Stillwater. Furthermore, the "envisioned" increase in the enrollment at the College has not materialized, if information said to have been released by the College is correct.

Conceding that the Board is authorized to determine the needs of the A. & M. College for a water system, it does not follow that the Board has any authority to determine the water needs of the city of Stillwater, which needs the Board intends to supply.

The resolution of the Board discloses that the bond issue of $3,000,000 is for the purpose of the "acquisition of a new water supply system . . . and improving and extending the power and heating plant and system . . ."

Among the papers submitted to us is a "Report on Economic Features of Proposed Water Supply System for Oklahoma A. & M. College," which is said in the majority opinion to have been prepared by a "well known engineer of recognized high professional standing." Upon examination I find the report relates to the water system alone. Nowhere do I find any evidence of the need for "improving and extending the power and heating plant and system."

It is true that the resolution recites that "it has been determined" that it is necessary to improve and extend the power and heating system, but we are not advised upon what evidence, if any, such finding of the ultimate fact of the need was made. To approve the bonds in such circumstances is but to give the proceedings a "rubber stamp" approval so that the bonds issued thereunder will not be subject to attack thereafter.

We are not advised as to what portion of the $3,000,000 is to be expended for a water system and what part for the power and heating system. Nor was the public advised as to how and in what amounts this huge sum of money is to be expended by the notice which was published. This is an ex parte proceeding. I think we should be informed before we act, especially in view of the expressed intention of the Board to erect for the A. & M. College a utility which is private in name but public in fact. It will be relieved, however, of the controls and restrictions imposed by law upon other public utilities.

I do not impugn the motives and intentions of the members of the Board, for I know them to be able, honest and honorable men, but under the majority's construction of the act under which the bonds in question are to be issued, there are no bars or restraints left for controlling others who may not be so well intentioned.

The resolution also discloses that it is anticipated that there will be a surplus of revenue received from the business of operating the utilities over and above annual needs for the principal and interest of the bonds and that such surplus may be "devoted to and used for any lawful purpose."

By approving the bonds the majority opinion of necessity approves the proceedings under which the bonds were issued, including the provision for the use of surplus revenue, which is so broad and indefinite in meaning that it should never be approved. The majority opinion says that the bonds are approved by this court on the theory that the revenue from the utilities involved will be devoted to the uses specified in 70 O. S. Supp. 1947, §2076. That is a commendable position, but the court can only approve or disapprove the bonds as presented. We cannot add to or take from the bond proceedings. If the Board has provided for the use of the revenue in a way not authorized by the statute under which the revenue accrues, it has acted beyond its authority and the bonds should be disapproved.

I am of the opinion that the Board of Regents has not acted within the authority granted it by statute and I therefore respectfully dissent.