19109

Richard Benjamin MOYE, by His Guardian Ad Litem, Benjamin Russell Moye, and Benjamin Russell Moye, Appellants, v. The BOARD OF TRUSTEES OF the UNIVERSITY OF SOUTH CAROLINA, and Daniel R. McLeod, as Attorney General of the State of South Carolina, Respondents.

(177 S. E. (2d) 137)

*Messrs. Herbert, Dial & Windham,* of Columbia, *for Appellants,*

*Messrs. Daniel R. McLeod, Attorney General,* of Columbia, *Sinkler, Gibbs & Simons,* of Charleston, and *Robinson, McFadden & Moore,* of Columbia, *for Respondents,* ▊

48

October 7, 1970.

*Per Curiam.*

This is an appeal by plaintiffs from a judgment of the circuit court rejecting their challenge to the constitutionality of a 1970 act of the General Assembly authorizing the issuance of bonds by the University of South Carolina to finance the expansion and improvement of Carolina Stadium. We adopt the statement of the facts and issues from the circuit decree as follows:

"At its 1970 Session, the General Assembly of South Carolina enacted an act entitled 'AN ACT TO EMPOWER THE TRUSTEES OF THE UNIVERSITY OF SOUTH CAROLINA TO ISSUE SPECIAL OBLIGATION BONDS TO PAY FOR THE COST OF ENLARGING AND IMPROVING CAROLINA STADIUM; TO PRESCRIBE THE CONDITIONS UNDER WHICH SUCH BONDS MAY BE ISSUED AND TO MAKE PROVISION FOR THE PAYMENT THEREOF,' (the Act) bearing Ratification No. R-1193, and approved by the Governor on April 16, 1970. The Act authorizes the issuance of Five Million Dollars ($5,000,000) of Special Obligation Bonds for enlarging and improving the football stadium of the University of South Carolina. The Act provides in part that to insure the payment of principal of and interest

on the bonds, the Trustees must place into effect a 'special student fee' to be 'imposed upon each person in attendance at any regular session (excluding summer sessions) of the University of South Carolina who is enrolled in a sufficient number of classes or courses for which credit is given toward any degree offered by the University of South Carolina to be classified as a regular full-time student for the purpose of assessing other student fees.' The special student fee must be sufficient (after taking into account other sources of revenue) to provide for the payment of the principal and interest on the bonds.

"This suit was brought by Plaintiffs, a resident student at the University and his father, a resident and taxpayer of South Carolina, on their own behalf and on behalf of all others similarly situated, seeking a declaration that the Act is unconstitutional and enjoining the issuance of the bonds. * * *

"The Defendants to this action are the Board of Trustees of the University of South Carolina and the Attorney General of South Carolina.

"Plaintiffs allege that the Act is unconstitutional, null and void to the extent that it authorizes a 'special student fee' for the following reasons:

"(a) That the 'special student fee' constitutes a tax which violates Article X, Section 1 of the South Carolina Constitution which requires uniform and equal taxation.

"(b) That the said Act is an unconstitutional attempt to delegate to the Defendant, Board of Trustees, the taxing power of the legislature, and

"(c) That the maintenance and improvement of a football stadium for the use of the general public and students of the University is not a necessary and proper undertaking for an educational institution, and to require the payment of a fee by the Plaintiffs to accomplish such end as a prerequisite to obtaining an education at the University of South Carolina violates the due process and equal protection clause of the South Carolina and the United States Constitutions.

"For these reasons the Plaintiffs ask the court to enjoin and restrain the issuance of the said bonds and the imposition of the 'special student fee', and they ask the Court to declare that part of the Act providing for the said fee to be unconstitutional, null and void.

"The Answer denies that the 'special student fee' is a tax, alleges that the Board of Trustees is authorized by the Act and by Section 22-104, Code of Laws of South Carolina, 1962, as amended (the Code), to fix student fees, that the improvement of Carolina Stadium is necessary and for the benefit of the University, and that the Act is valid and constitutional and good authority for the issuance of the bonds and the imposition of the 'special student fee'."

The premise of both the first and second challenges to the constitutionality of the act is that the fee authorized thereby constitutes a tax within the meaning of the constitutional limitations relied upon.

The circuit court, defining a tax as "an obligation for support of the government as a whole, a contribution to the public treasury out of which are paid all general expenses of government," concluded that the charge in question is not a tax, because it is imposed for the improvement of the physical plant of the University of South Carolina, not for the support of state government. The tax definition adopted by the court is too restrictive, because it fails to encompass a frequently resorted to field of taxation, *i. e.,* special taxes assessed and collected for special purposes rather than for the payment of general expenses of government. However, we are convinced that there is no merit in the claim that the fee in question is subject to constitutional limitations applicable to taxes.

No one denies the authority of the General Assembly and Board of Trustees to exact from students various charges to be applied toward University expenses. We find no constitutional proscription against the allocation of a student fee toward a permanent improvement. It would

seem that this could be done by the Board of Trustees under its general authority to "fix tuition fees and other charges for students attending the University, * * *." Section 22-104, Code of 1962. A *fortiori,* such a charge is lawful when, as here, the charge is specially authorized by statute. That the public treasury may be relieved of the cost of a permanent improvement to the extent of the student's contribution does not mean that the student is being taxed. Instead, he is simply paying a fee which, with other charges fixed by the Board of Trustees, is lawfully required of him for the high privilege of attending the University, which is heavily subsidized from the general revenues of the State.

It follows that the first and second grounds upon which plaintiffs attack the constitutionality of the statute are without merit. We also agree that the third and final ground of attack on the statute is without merit. The following quotation from the circuit decree adequately expresses our reasons for this conclusion:

"(The) issue is whether the maintenance and improvement of a football stadium is a proper undertaking for a state university, the expenses of which are properly chargeable in part against the students in attendance at the university and therefore not violative of the due process clause of the State or Federal Constitutions. * * *

"Plaintiffs' argument against the use of a mandatory student fee for the financing of the proposed stadium improvement is two-pronged. On one hand, Plaintiffs say that the fee is unreasonable because it must be paid by all students without regard to any actual use of the facilities by individual students; that it is unfair to require students not interested in attending athletic contests in the stadium to support the improvement and maintenance of the stadium on the same footing as those who regularly attend or participate in those athletic events. On the other hand, Plaintiffs argue that it is unreasonable to require the students to bear any of the burden of financing expansion of the stadium when there is

already more than sufficient capacity to accommodate the whole student body in the present stadium; that any further expansion of the stadium would not benefit the students but could only serve to benefit the general public and that the economic burden should therefore fall on the public rather than on the students. These two contentions will be dealt with in order.

"A university, by its very nature, is a highly diversified institution whose aim is the highest development, mentally, morally and, physically, of those who repair there to pursue excellence in their chosen fields. Indeed, one of the widely recognized criteria for judging the quality of a university is the breadth of activities, academic, social and athletic which it is able to offer both its students and the state of which it is an integral and vital part. The modern university is a monument to the ideas that the greatest benefit will be derived when men are free to choose among a variety of possible pursuits, to follow those which they find appealing, and to test themselves and their ideas in an atmosphere of tolerance and cooperation. * * *

\* \* \*

The case of *Rainey v. Malone,* 141 S. W. (2d) 713 (Tex. Ct. Civ. App. 1940) upheld the charging of a student union fee payable by all students at the University of Texas. The fee was challenged on the basis that the fee was not authorized as a condition precedent to admission, and that it was not properly chargeable against Plaintiff, who had no intention of using the student union. The court rejected both of these arguments, holding that the board of regents had the implied power to set the fee and that payment was not dependent upon actual use of the facilities thereby made available.

"A similar case is that of *Iowa Hotel Ass'n. v. State Board of Regents,* 253 Ia. 870, 114 N. W. (2d) 539 (1962). In this case the challenge was made that the Board was without authority to collect fees for the expansion of the student union, and that any such fees which might be charged

could not be charged against students who do not use the union. As to the second contention, the Iowa Supreme Court said:

'The State University of Iowa is the property of the state. It is primarily tax supported by appropriations by the legislature. The service rendered, however, in many fields of activity is not free. Tuition and fees of various kinds are charged. The fact that a student may not participate or take advantage of every facility available does not mean that he is or should be relieved from paying student fees allocated to various projects.'

In answer to the contention that the board was without authority to set a fee for expansion of the union, the court cited the act authorizing the expansion, which also authorized the board to charge a student fee to be applied to the cost of the project. In addition, the court found that the administration of the physical property of the university 'is as much the responsibility of the board and the university administration as the teaching of anatomy, physics, literature or law.' Just as the board had authority to charge tuition, the court reasoned, it had authority to charge fees for the use and benefit of physical facilities made available to the students. In concluding its discussion of the propriety of the student fee, the Iowa court stated:

'Numerous cases have arisen in other jurisdictions under various statutes. Individual analysis would extend this opinion unnecessarily. The weight of authority supports the conclusion that where the legislature authorizes the charging of student fees the board of regents acts legally in imposing the charge.'

(We omit the circuit decree's analyses of the following additional cases supporting the exaction of student fees: *Rheam v. Board of Regents,* 161 Okl. 268, 18 P. (2d) 535 (1933); *State ex rel. Priest v. Regents of the University of Wisconsin,* 54 Wis. 159, 11 N. W. 472 (1882); *State ex rel. Veeder v. State Board of Education,* 97 Mont. 121, 33

P. (2d) 516 (1934); *Application of Board of Regents of the University of Oklahoma*, 200 Okl. 442, 195 P. (2d) 936 (1948); *Contra, Connell v. Gray*, 33 Okl. 591, 127 P. 417 (1912).)

"Though none of the above cases involved a fee for the expansion of a university football stadium, we believe that the reasoning and holdings of the decisions are apposite to the case at bar. The Board of Trustees are authorized to charge student fees by Section 22-104 of the Code and by the Act authorizing the bonds for the improvement of Carolina Stadium. This authority is in addition to the implied power of the board to do those things necessary and proper for the achievement of the ends for which the university was founded. It is clear that sufficient authority exists for the charging of the 'special student fees.' It is also clear that there is no requirement that fees be charged only against those using the facilities; the cases clearly so hold, and we believe the reasons for such a holding are sound. We therefore hold that the 'special student fee' is valid and is properly chargeable against all 'full-time' students at the University of South Carolina, and is in no way a denial of due process or equal protection of the laws as guaranteed by the Federal and South Carolina Constitutions.

"As to the question of the propriety of the university's making the proposed improvements at all, in view of the fact that there is already adequate seating capacity for the whole student body, Plaintiffs' arguments might better be directed to their legislators and Board of Trustees in whose hands the power to make such policy decisions has been reposed. Article X, Section 8 of the South Carolina Constitution states that:

'The General Assembly may provide for the maintenance of * * * the University of South Carolina * * *.'

By a number of Acts presently codified as Section 22-104, Code of Laws of South Carolina, 1962, as amended, the legislature has placed a great deal of the authority for the

maintenance of the university in the hands of the Board of Trustees. These two bodies have the primary responsibility for seeing that the overall program of the university is formulated and carried out in such a manner as to serve the State and students to the best advantage of both. The General Assembly, in the Act authorizing the bonds here at issue, has determined that there is in fact a need for the improvement contemplated by that Act. In its answer to the complaint in this case the Board of Trustees expresses its view that the present stadium is inadequate for the university's purposes and that there is a need for improvements, which improvements will be beneficial to the university. These are determinations within the purview of authority vested in these two bodies, and their findings should not be disregarded by the judiciary in the absence of a showing that such findings were capricious or without a basis in fact. It is not the province of the court to substitute its judgment for that of the authorities entrusted with the maintenance of the university unless it is clear that these authorities have acted in abuse of the powers vested in them. It is the determination of the Board of Trustees that an improved stadium will reap benefits in the areas of athletics, school unity, publicity, and financial gain which more than justify the amount expended for improvements. Though plaintiffs may question the wisdom of such a determination, it is difficult to deny that the Board's findings have a solid basis in fact. The fact that a stadium may have capacity sufficient to seat the entire student body does not necessarily mean that the Stadium is adequate, nor that expansion would be unreasonable. Students are not the only people to whom seating may properly be made available. Parents and family of students, their friends, alumni and their families and friends, faculty, staff, supporters and opponents have an interest in attending games. And they too help finance the stadium out of their admission fee. It is clear that both the legislature and Board of Trustees were acting within the scope of their authority in deciding to make improvements to Carolina Stadium for

the benefit of the University of South Carolina. This being so, the decision to improve Carolina Stadium violated no statutory or constitutional provision, expressed or implied, and was in compliance with 'due process of law.' "

\* \* \*

The exceptions are overruled and the judgment appealed from is affirmed.