BOARD OF REGENTS METHOD OF FINANCING The Board of Regents of an educational institution is legally empowered to expend budgetary funds from other "legally available sources" for the purpose of the operation and maintenance of self liquidating facilities, even though such budgetary funds may include State-appropriated and revolving funds provided that the State Regents have allocated such funds in accordance with the statutes for such purpose. The State Regents may authorize a State educational institution to collect a fee for specific purposes under the provisions of 70 O.S. 3207 [70-3207] (1971). Prospectively interim financing by the Board of Regents of State educational institutions must be arranged subsequent to the certification of the State Regents under the provisions of 70 O.S. 4014 [70-4014] (1970) and the provisions of 70 O.S. 4010 [70-4010] (1970) must be complied with so far as the method of interim financing is concerned. We have considered your request for an opinion in which you essentially ask the following questions concerning 70 O.S. 4001 [70-4001] (1970) et seq.: "1. Is the Board of Regents of a State educational institution legally empowered to covenant that it will impose and collect student fees from all regular students enrolled at said institution in amounts without limitation to produce bonds as necessary to pay the principal and interest, meet the reserve requirements of the bond issue, and operate and maintain the structures? 2. Is the Board of Regents for a State educational institution legally empowered to expend budgetary funds from other `legally available sources' for the purpose of operation and maintenance of the self-liquidating facilities constructed, which budgetary funds may include State appropriated and revolving funds allocated by the State Regents for the support of the educational budget of the institution? 3. Is the Board of Regents of a State educational institution legally empowered to commit a part of the revenues of a previously authorized student facility fee for payment of construction of facilities not included among those facilities for which the fee was authorized by the State Regents? 4. Under what circumstances and how may interim financing be arranged by the Board of Regents of a State educational institution?" Each of your questions will be entertained separately. 1. Article XIIIA, Section 2 of the Oklahoma Constitution, specifies the powers of the State Regents for Higher Education and specifically provides that "it shall have the power to recommend to the Legislature proposed fees for all of such institutions, and any such fees shall be effective only within the limits prescribed by the Legislature." So far as we have been able to determine there has been no judicial interpretation of the language in this Section. Section 2 of Article XIII-A also provides that the State Regents "shall prescribe standards of higher education applicable to each institution". There would appear to be no other constitutional provisions which bear upon the question of the power to prescribe student fees at a State educational institution. Title 70 O.S. 3207 [70-3207] (1970), provides that: "The State Regents are authorized to prescribe and coordinate matriculation, enrollment, non-resident, course, laboratory, library, infirmary, student activity, and other fees commonly charged students at institutions of higher learning." Apparently in conflict with 70 O.S. 3207 [70-3207], 70 O.S. 4001 [70-4001](b) (1970) authorizes the Institutional Regents to "charge and collect from all students in attendance at the university or such college, school or institution, or from any specified class or part thereof for which such facilities are so deemed necessary, fees and charges for the use or availability of such buildings and structures and for the services or commodities to be made available by such plants, systems or facilities". Finally, 70 O.S. 4004 [70-4004](a)(6) (1970) authorizes the Institutional Regents to "fix rents, charges and fees to be imposed in connection with and for the use of the building and the facilities supplied thereby, which rents, charges and fees shall be considered to be income and revenues derived from the operation of the building, and are hereby expressly required to be fully sufficient to assure the prompt payment of principal and interest on the bonds, as each becomes due, and to make and enforce such rules and regulations with reference to the use of the building, and with reference to requiring any class or classes of students to use the building as it may deem desirable for the welfare of the institution and its students or for the accomplishment of the purposes of this Article." Section 70 O.S. 3207 [70-3207] is a delegation of legislative authority to the State Regents to prescribe and coordinate fees commonly charged students at institutions of higher learning, and supposedly sets a maximum amount of such fees. This would appear to be a proper delegation of the legislative authority. Section 70 O.S. 4004 [70-4004](a)(6) in our opinion authorizes institutional Regents to fix, charge and collect rentals, charges or fees for the use of a building or facility and may require a class or classes of students to use such building or facility, but said Regents are not authorized to impose a fee upon all students for the mere availability of such building or facility. On the other hand, Section 70 O.S. 4001 [70-4001] authorizes the Institutional Regents to "charge and collect from all students" fees and charges for the "use or availability" of such buildings or facilities, when such buildings or facilities are deemed necessary by the Board for the comfort, convenience and welfare of the student body as a whole. The language of Section 4001 was interpreted by the Oklahoma Supreme Court in Application of Board of Regents of University of Oklahoma,200 Okl. 442, 195 P.2d 936 (1948) to grant the University Regents the power to fix fees to be charged of all students. This power to fix student fees extends in our opinion to buildings and facilities which are necessary for the comfort, convenience and welfare of the student body as a whole. The finding by the institutional Regents of the necessity of the building or facility to the student body as a whole must be made with regard to the usefulness of the building or facility to the student body as a whole. Application of Board of Regents of University of Oklahoma, supra. We do not find, however, that such fees may be imposed without limitation. 70 O.S. 4014 [70-4014] (1970) provides: "For each of the proposed bond issues to be issued pursuant to 4001 through 4014, Title 70 of the Oklahoma Statutes, a Statement of Essential Facts shall be prepared by the issuing Board of Regents for the use and information of prospective bond purchasers. It shall be the duty of the Oklahoma State Regents for Higher Education to examine such Statement of Essential Facts and determine that, based upon such facts and projections, the projected revenue will satisfy the financial obligation to be incurred under the proposed bond issue. If the facts are found by the State Regents to be substantially accurate and if the State Regents find that, based upon such facts and projections, the projected revenue will satisfy the financial obligation to be incurred under the proposed bond issue, then the Oklahoma State Regents for Higher Education shall certify such to the Attorney General of Oklahoma before the proposed bond issue can be approved by the Attorney General." In our opinion the legislative intent of 70 O.S. 4014 [70-4014] (1970) requires the issuing Board of Regents to set forth exacting facts and figures which may be studied by the Oklahoma State Regents for Higher Education to determine the feasibility of the projects. This intent would be circumvented by the mere imposition of or a pledge to impose a student fee in any amount necessary to retire the bonds. It is therefore the opinion of the Attorney General that your first question be answered in the negative. For the reasons above stated, it is the opinion of the Attorney General that the Board of Regents of a State educational institution although legally empowered to impose and collect a student fee for the use or availability of such buildings or facilities which are deemed necessary by the Board for the comfort, convenience and welfare of the student body as a whole, the Board of Regents is not legally empowered to covenant that it will impose and collect student fees from such students in amounts without limitation to produce funds as necessary to pay the principal and interest, meet the reserve requirements of the bond issue, and operate and maintain the structures under a revenue bond project. 2. The revenue bond statutes specifically provide a number of "legally available sources" for the payment of the principal and interest on bonded indebtedness including revenues from the building or combination of buildings and other existing revenue-producing buildings or facilities as well as student facility fees, Federal grants, sale of surplus commodities and services, among others. All of these funds may be used for the payment of the cost of maintaining and operating the building and the establishment of a reserve for such purposes to the extent deemed advisable by the University Regents. 70 O.S. 4007 [70-4007] (1970). The question of the use of State-appropriated funds or revolving funds which are allocated to the University in accordance with the statutes by the State Regents for the maintenance and operation of the self-liquidating facilities presents the issue of whether payment of the principal and interest on the bonded indebtedness must be made from the "net revenues" from the operation of the facilities. This question of whether the revenue bond system must be totally self liquidating was presented to the Oklahoma Supreme court in the case of Application of Board of Regents of University of Oklahoma,200 Okl. 442, 195 P.2d 936 (1948). The Court in a divided opinion held that the pledge of State monies for the payment of operation and maintenance of the self-liquidating facilities is proper at least where other methods of payment are provided and such State monies are only pledged to cover the operational expense deficit. However, it must be noted that the State monies so pledged or used must have been appropriated and allocated to the institution Regents in accordance with the statutes for such designated purpose. It is, therefore, the opinion of the Attorney General that your second question be answered conditionally that the Board of Regents of an educational institution is legally empowered to expend budgetary funds from other "legally available sources" for the purpose of the operation and maintenance of self-liquidating facilities, even though such budgetary funds may include State-appropriated and revolving funds provided that the State Regents have allocated such funds in accordance with the statutes for such purpose. 3. The State Regents may authorize a State educational institution to collect a fee for specific purposes under the provisions of 70 O.S. 3207 [70-3207] (1970). It would follow that the local Regents would be empowered to use the proceeds of that fee only for the purposes specified in the authorization by the State Regents. It is, therefore, the opinion of the Attorney General that the answer to your third question is in the negative and that the Board of Regents of a State educational institution is not legally empowered to commit a part of the revenues of a previously authorized student facility fee for payment of construction of facilities which were not included among those facilities for which the fee was authorized by the State Regents. 4. Although considerable authority might be found which would indicate that the Board of Regents of a state educational institution is empowered to borrow money by any method available for any proper purpose, it is the opinion of the Attorney General that so far as revenue bond issues are concerned, only one method is available to institutional Regents. No doubt, Rheam v. Board of Regents of University of Oklahoma, 161 Okl. 268, 18 P.2d 535, which sets forth the rule that: "The Board of Regents has the implied power to do everything necessary and convenient to accomplish the objects for which that school was founded and which is not prohibited, either expressly or impliedly, by the law." appears to hold that the institutional Regents would have such power. 70 O.S. 4010 [70-4010] (1970) provides that: "Whenever the Board shall have adopted a resolution authorizing the issuance of any series of bonds hereunder and said bonds have been sold but prior to the time as of which the bonds can be delivered the Board finds it necessary to borrow money for the purpose for which the bonds were authorized, the Board may, by appropriate resolutions, authorize the borrowing of money in the anticipation of the issuance of the bonds, and the issuance of the note or notes of the Board to evidence such borrowing." Contrary to the Attorney General's Opinions dated February 18, 1946, and March 6, 1946, which upheld an alternative method of interim financing, we are of the opinion that Section 4010 is an authorization by the Legislature to borrow money by a specified method to construct self-liquidating facilities to be eventually paid for by revenue bond proceeds and by implication is a limitation upon the power of the Board of Regents of an educational institution to borrow money by other methods of interim financing. It would further appear that since 70 O.S. 4014 [70-4014] (1970) provides that a Statement of Essential Facts concerning a proposed bond issue to be issued pursuant to Section 4001 shall be prepared by the issuing Board of Regents and submitted to the Oklahoma State Regents for Higher Education prior to the incurrence of the financial obligation under the proposed bond issue, that the financing cannot be arranged until after certification by the State Regents under the provisions of Section 4014. It is therefore the opinion of the Attorney General that prospectively interim financing must be arranged subsequent to the certification of the State Regents under the provisions of 70 O.S. 4014 [70-4014] (1970) and that the provisions of 70 O.S. 4010 [70-4010] (1970) must be complied with so far as the method of interim financing is concerned. Insofar as this opinion conflicts with Attorney General's Opinions dated February 18, 1946 and March 6, 1946, regarding the question of interim financing, such prior opinions are superseded. (Gary M. Bush)