**Application of the BOARD OF REGENTS OF the UNIVERSITY OF OKLAHOMA for the Approval of the $7,060,000 Utility System Revenue Bonds, Series 1979.**

No. 53586.

Supreme Court of Oklahoma.

May 25, 1979.

J. Scott Brown, Fagin, Brown, Bush, Selvidge & Tinney, Oklahoma City, for the Board of Regents, University of Oklahoma.

Jan Eric Cartwright, Atty. Gen., John F. Percival, Asst. Atty. Gen., Norman, State of Oklahoma.

SIMMS, Justice:

The Board of Regents of the University of Oklahoma seek to invoke original jurisdiction of this Court and have us judicially validate a Utility System Revenue Bond Issue, Series 1979, in the amount of $7,060,-000.

Proceeds from sale of the 1979 Series Bonds is to complete Phase V of the steam and chilled water plant servicing the Health Sciences Center located in Oklahoma City, Oklahoma. Phase V consists of expansion and improvement of the system.

Our present Attorney General objects to this Court entertaining the instant validation suit for three reasons: First, the 1979 Series Bond Issue has not had prior approval of the Attorney General; Second, certain of the buildings within the Health Sciences Center complex are private rather than related to the University of Oklahoma; and, Third, because the plant supplies certain amounts of heat and chilled water to privately operated medically oriented institutions, the Board of Regents are subject to the regulatory authority of the Corporation Commission regarding the rates charged by the Board of Regents to those not part of the University of Oklahoma Medical School.

Issuance of self-liquidating revenue obligations to finance construction of public utility plants or systems and extensions thereof for the supplying of water and heat to colleges, universities or "related institutions" is authorized by 70 O.S.Supp.1973, § 4001, and 70 O.S.1971, § 4002. Section 4014 of Title 70 mandates that the Board of Regents of the University prepare a Statement of Essential Facts for the use and information of prospective purchasers of Higher Education self-liquidating revenue bonds. The Regents for Higher Education must examine the Statement and determine if projected revenues will satisfy the obligation to be incurred by sale of the bonds "then the Oklahoma State Regents for Higher Education *shall* certify such to the Attorney General before the proposed bond issue can be approved by the Attorney General." (E.A.)

Additionally, 70 O.S.1971, § 4008, provides all Higher Education Revenue Bonds "shall" be submitted to the Attorney General for examination and if certified by the Attorney General as legal obligations shall be incontestable in any court in Oklahoma unless suit be brought within thirty days from date of approval by the Attorney General. Sec. 4008 further requires the bonds to have on the backs thereof the certificate required by Sec. 29, of Article X of the Constitution of Oklahoma. Art. X, § 29, in pertinent part, reads: "No bond or evidence of indebtedness by [the] State shall be valid unless the same shall have endorsed thereon a certificate, signed by the Auditor and Attorney General of the State, showing that the bond or evidence of [indebtedness] is *issued pursuant to law* and is within the debt limit." (E.A.)

Clear reading of the cited statutory provisions tells us that both *proposed* Higher Education Revenue Bond Issues, as well as the bonds themselves, must be approved by the Attorney General to become valid and binding obligations.

Board of Regents urges that under the provisions of 70 O.S.1971, § 4011, the Board may first bring an original action in this Court without receiving bond issue approval or disapproval of the Attorney General. Regents cite *Application of Board of Regents, Oklahoma Agricultural and Mechanical Colleges for "Utility System Revenue Bonds, Series 1948", 201 Okl. 54, 200 P.2d 901 (1948); Application of Board of Regents of University of Oklahoma, 200 Okl. 442, 195 P.2d 936 (1948); and, Application of Board of Regents of University of Oklahoma, Okl., 427 P.2d 429 (1966),* in support of their legal proposition that this Court may

validate the bonds without approval of the Attorney General. The cases cited by Regents were all promulgated prior to the enactment of § 4014, which became law in 1970, and which requires the certifying of proposed bond issues to the Attorney General for his approval. Put another way, the cases relied upon by the Board of Regents as authorizing a validation suit without the bond issue having prior approval have been superseded by 1970 legislative enactment.

■ This Court is without authority to judicially decree that the bonds "had been properly authorized" in accordance with the provisions of Title 70, § 4001, et seq., until they have been affirmatively approved or disapproved by the Attorney General.

We therefore decline to validate the bonds at this time.

However, a controversy requiring judicial intervention exists between the Regents and the Attorney General aside from the Regents attempt to circumvent the Attorney General's approval of the issuance of the bonds.

The 1979 Series Revenue Bonds have been advertised for bid, bids have been opened, and the bonds sold and are to be delivered to the purchaser within 75 days from the date of sale, all without approval of the Attorney General. Marketability of the bonds remain questionable. In this regard, it is to be noted that Phase III and IV Bonds, proceeds from the sale of which were used to finance projects not unlike those to be financed by the 1979 Series, were approved by a prior Attorney General, and no suit was brought in this Court to validate the bonds.

The legal questions arising between the Board of Regents and the Attorney General are *publici juris* in nature for it is essential to the health and welfare of the citizens of Oklahoma that we have a viable Health Sciences Center capable of expanding in an orderly fashion to meet increasing demands.

We therefore turn our attention to the issue of whether or not certain of the privately occupied buildings located in the Health Sciences Center and served by the Oklahoma University Medical Center utility system are "related" institutions within the contemplation of § 4001(a). This statute authorized the Board to issue revenue bonds to extend utility plants and improvements to fill the need of educational institutions or "related institutions".

Our statutes do not specifically define the term "related institutions" as used in the revenue bond provisions of the Higher Education Code. However, Senate Concurrent Resolution # 24, adopted in April, 1979, is specifically directed toward defining legislative intent embodied in the phrase "related institutions". The Resolution, in pertinent part, reads:

"SECTION 1. The term 'related institutions' for the purpose of the supplying of water, gas, heat or power to related institutions by Boards of Regents of State Educational Institutions, as used in § 4001 of Title 70 of the Oklahoma Statutes *shall mean any entity, public, nonprofit or private, to whom the supplying of water, gas, heat or power* is determined by said Boards to be related to and compatible with the enhancement of the comfort, convenience and welfare of their students." (E.A.)

SCR # 24 neither seeks to amend or expand the provisions of the statute but is only an expression of legislative intent in using the phrase "related institutions" contained in the statute. While the concurrent resolution is not legally binding upon this Court, we do find the Resolution persuasive in construing the meaning of the words "related institutions" as used in the statutes. The definition of "related institutions" articulated in the Concurrent Resolution is reinforced in law because the Health Sciences Center is defined by area in 70 O.S.Supp.1974, § 3306.14, as being:

" * * * A general area of Oklahoma City bounded by a line beginning at the point of intersection of Northeast Eighth Street and North Lottie Avenue, thence north along North Lottie Avenue to Northeast Fifteenth Street, thence west along Northeast Fifteenth Street to North Stiles Avenue, thence south along

North Stiles Avenue to Northeast Eighth Street, thence east along Northeast Eighth Street to the point of origin."

Title 70, O.S.Supp.1974, § 3306.18, further provides that no new capital improvements in an amount exceeding $20,000 can be initiated within the Health Sciences Center Area by, among others, the Oklahoma State Regents for Higher Education or the Board of Regents of the University of Oklahoma without express authorization of the Health Sciences Center Planning Committee. By establishing specific boundaries and requiring capital improvements of major significance be subjected to approval of a Health Sciences Center Planning Committee, the legislature clearly intended to form a single inter-related, medically oriented complex with educational, library, research, and hospital facilities in close proximity so as to create the synergistic effect most desired in a Health Sciences Center.

The beneficiaries of the services provided by the utility system are: Basic Sciences Education, Bio-medical Sciences, Nursing College, Dental Clinical Sciences, Health College, Speech and Hearing, Service Center, University of Oklahoma Medical College Library, Oklahoma Medical Research Foundation, Children's Hospital, State Health Department, University Hospital, Everett Towers, Presbyterian Hospital, Presbyterian Doctor's Building, McGee Eye Clinic, Oklahoma City Clinic, Allergy Clinic, University Hospital Clinic, Children's Hospital East Addition, Recreational Center, Children's Diagnostic Center, Children's Hospital Rehabilitation Center, College of Pharmacy and commercial space.

One can readily determine by reading the list of the users of the system that they are compatible with the science of the healing arts; all are located within the statutorily defined boundaries of the Health Sciences Center; all are inter-dependent, and the mere fact that certain of them are designated as private, such as Presbyterian Hospital, rather than public, does not cause them to be unrelated within the meaning of the statute.

■ Doctor's offices and a small amount of commercial space is desired to permit practitioners and doctor professors to be near the teaching colleges and hospitals. Hospital facilities where the students can receive first hand training and the doctor professors can demonstrate and improve the skills of students is essential to quality medical service in Oklahoma. Each of the facilities located within the Health Sciences Center bears a direct relation to the University of Oklahoma College of Medicine and therefore is a "related institution" within the meaning of § 4001(a), supra.

Therefore, the Board of Regents of the University of Oklahoma may properly cause to be issued utility system revenue bonds for the expansion and improvement of the steam and chilled water plant so as to enable the plant to provide services to any structures located within the statutorily defined boundaries of the Health Sciences Center and which are used for study, practice or research in the field of health sciences, even though such facility may be privately operated.

We next address the question of whether or not the services provided by the plant to privately operated institutions located within the Center come within the rate making authority of the Corporation Commission.

Title 79, O.S.Supp.1979, § 160.1, reads: "The Corporation Commission shall have rate making authority and general jurisdiction over all supply systems of natural gas, steam, and heat serving the *general public* * * *" (E.A.) The system to be expanded does not serve the general public but only the University of Oklahoma Medical Center Campus and related institutions.

■ Also, 70 O.S.1971, § 4013, provides that the Board of Regents shall have exclusive determination of need, control, and management of all self-liquidating revenue bond matters for the benefit of universities, colleges, schools, and institutions under its jurisdiction. The revenue derived from the sale of steam and chilled water to those entities being served by the plant are to be used in retirement of the bonds. The revenues themselves are pledged security for

payment of the bonds. The management of revenue bond matters comes within the exclusive purview of the Board of Regents and the Corporation Commission has no right to control the revenues charged by the Board of Regents for the furnishing of services to customers of the heating and cooling system.

As pointed out in Applicants Brief, two overriding reasons exist why the Board of Regents must be free of Corporation Commission control in administering the system. First, utility service agreements have been entered into with each of the customers of the heating and cooling system, and they provide the rates shall be adjusted monthly if necessary to assure that the revenues are at least adequate to provide for the payment of the revenue bond debt service, as well as operation and maintenance of the plant itself. Revenues derived from each of the recipients of the services of the heating and cooling plant will go not only to pay the operation and maintenance costs incurred by the University of Oklahoma in operating the Project, but also will go to retire the Bonds. The Board of Regents must be permitted to exercise independent control over cost allocations of the utility service as a proper exercise of their lawfully vested authority unfettered by the Corporation Commission.

We therefore refuse the Application of the Board of Regents to validate the Series 1979 Revenue Bonds until such time as they have been formally approved or disapproved by the Attorney General. In so doing, we hold that the private consumers of the plant are "related institutions", as that term is used in § 4001(a), and that the Corporation Commission has no jurisdiction over the "rates" the Board of Regents may exact for heat and chilled water generated by their plant and furnished to medically oriented facilities located within the Health Sciences Center.

APPLICATION DENIED.

All the Justices concur.